FILED IN CLERKS OFFICE
AUG 18 '26 PM2:59 USDC MA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KRANTHI SAGAR PACHIKORU,<br>Plaintiff,<br><br>v.<br><br>BERRY APPLEMAN AND LEIDEN LLP,<br>Defendant. | Civil Action No.: ______________ |

# COMPLAINT

**(Jury Trial demanded)**

Plaintiff Kranthi Sagar Pachikoru ("Mr. Pachikoru" or "Plaintiff"), filing pro se, brings this Complaint against Defendant, Berry Appleman and Leiden LLP ("BAL" or "Defendant"). The allegations herein are made on Mr. Pachikoru's personal knowledge as to his own acts, observations, and communications, and otherwise on information and belief, founded on the documents and communications described herein; material evidence remains in BAL's exclusive possession, including documents BAL prepared or filed in Mr. Pachikoru's name that it never provided to him, and the client file it has refused to produce. Mr. Pachikoru anticipates that discovery will yield further evidentiary support for the allegations herein and reserves the right to seek leave to amend this Complaint to reflect that evidence. Mr. Pachikoru alleges as follows:

## I. INTRODUCTION

1. Plaintiff Kranthi Sagar Pachikoru, appearing pro se, brings this action against Defendant, Berry Appleman and Leiden LLP, a national immigration law firm, asserting five counts under the common law of the Commonwealth of Massachusetts: legal malpractice, breach of fiduciary duty, fraud (misrepresentation and concealment), negligent misrepresentation, and breach of contract.

2. This action arises from a joint attorney-client relationship in which BAL represented both Mr. Pachikoru and his sponsoring employer, Vertex Pharmaceuticals, Inc. ("Vertex"). BAL represented Mr. Pachikoru as the named beneficiary of an H-1B nonimmigrant petition and as the intended beneficiary of an Employment-Based, Second Preference National Interest Waiver ("EB-2 NIW") immigrant petition that BAL was engaged to prepare but never filed. Mr. Pachikoru executed BAL's written Disclosure and Consent to Joint Representation ("Disclosure and Consent to Joint Representation" or "DCJR") on April 6, 2023, and again on September 1, 2024, in BAL's proprietary client portal, "Cobalt."

3. From the inception of the representation in April 2023 through April 2026, BAL subordinated Mr. Pachikoru's interests to those of Vertex. Among other things, BAL:

   a. Selected and entered an incorrect Standard Occupational Classification ("SOC") code for Mr. Pachikoru's offered position on the Labor Condition Application ("LCA" or "Form ETA-9035 & 9035E") underlying his H-1B petition;

   b. Withheld from Mr. Pachikoru the May 4, 2023 United States Citizenship and Immigration Services ("USCIS") Request for Evidence ("RFE") concerning the specialty-occupation basis of his petition, despite his requests for a copy;

c. Refused Mr. Pachikoru's May 15, 2023 request to be provided the finalized RFE worksheet before its use in the response, and at no time provided Mr. Pachikoru any draft or final version of the RFE response for his review or approval before filing it with USCIS;

d. Prepared the response to the May 4, 2023 USCIS RFE in conjunction with Vertex, and filed it with USCIS in Mr. Pachikoru's name, without providing him any draft or final version for review or approval before filing;

e. Did not correct the misclassification of Mr. Pachikoru's position after the petition was approved;

f. Initiated no Permanent Labor Certification Process ("PERM"), proceeded solely under the EB-2 NIW pathway, and never disclosed to Mr. Pachikoru:

    i. That a qualifying filing on or before December 7, 2024 would have preserved his eligibility to extend H-1B status in one-year increments beyond the six-year statutory maximum, under §§ 106(a)–(b) of the American Competitiveness in the Twenty-first Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251, as amended ("AC21 § 106(a)");

    ii. That the date was approaching or had passed; or

    iii. That proceeding solely and untimely under the EB-2 NIW forfeited that eligibility; and

g. After Vertex terminated Mr. Pachikoru's employment on March 20, 2025, refused — between March 31 and April 2, 2026 — to produce to Mr. Pachikoru, the joint client, the H-1B petition file containing the RFE and worksheets BAL had previously withheld from him.

## II. PARTIES

4. Mr. Pachikoru is a citizen of India who was a lawfully present nonimmigrant residing in the Commonwealth of Massachusetts at all times relevant to this Complaint.

   a. Mr. Pachikoru is not, and at no time relevant to this Complaint has been, a lawful permanent resident of the United States.

   b. Mr. Pachikoru is a chemist by training whose education and profession are in the field of pharmaceutical sciences. He holds a Bachelor's and Master's in Pharmaceutical Sciences and Drug Product Development; a second Master's in Regulatory Affairs, Drugs, Biologics & Medical Devices; and a third Master's in Project Management. He worked as a chemist and quality assurance professional in the Good Manufacturing Practice ("GMP") regulated biopharmaceutical drug development and manufacturing industry, from 2013 until the termination of his employment in March 2025.

   c. Mr. Pachikoru holds no degree, certification, or formal training in computer science, computer programming, or computer systems analysis; has no professional experience in any computer-related occupation; and has never been employed in one.

   d. Mr. Pachikoru maintained lawful nonimmigrant status in the United States since his admission on F-1 student status in 2015, lawful work authorization continuously from 2016, and H-1B status continuously from October 2019, until the events alleged herein; he was most recently lawfully admitted to the United States in H-1B status on April 26, 2024, under the H-1B petition filed by BAL on behalf of the petitioner Vertex.

5. BAL is a limited liability partnership with its principal place of business in Richardson, Texas, and offices in San Francisco, Palo Alto, Houston, Boston, and elsewhere.

   a. BAL holds itself out as a national immigration law firm serving U.S. employers and their foreign-national employees.

   b. BAL maintained an attorney-client relationship with Mr. Pachikoru under the express, written joint-representation terms described herein, and BAL's representation of Mr. Pachikoru was performed substantially in, or directed into, the Commonwealth of Massachusetts, where Mr. Pachikoru resided and worked. Jennifer A. McGill, Esq. ("Ms. McGill"), the BAL attorney designated as responsible for Mr. Pachikoru's matters, is admitted to practice law in the Commonwealth of Massachusetts and practiced from BAL's office at One Federal Street, Boston, Massachusetts. Three further BAL attorneys are likewise admitted to practice law in the Commonwealth of Massachusetts: Elizabeth Lee, Esq. ("Ms. E. Lee") and Jennifer Schaaf, Esq. ("Ms. Schaaf"), who performed work on Mr. Pachikoru's matters, and Josiah Curtis, Esq. ("Mr. Curtis"), who acted for BAL in its correspondence with Mr. Pachikoru and his then-counsel concerning Mr. Pachikoru's client file.

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this is a civil action between a citizen of a foreign state — Mr. Pachikoru, a citizen of India who is not a lawful permanent resident of the United States — and citizens of States of the United States, namely the partners of Defendant BAL. The matter in controversy exceeds $75,000, exclusive of interest and costs. The interests at stake include Mr. Pachikoru's forfeited eligibility to extend H-1B status in one-year increments beyond the six-year statutory maximum — an eligibility that, preserved, would have authorized continued professional employment in the United States for a period of years — the loss of the permanent-residency pathway BAL was engaged to pursue, for which no priority date was ever established, and the earnings and professional advancement lost in consequence. Mr. Pachikoru has been unable to work lawfully in the United States since March 20, 2025.

7. BAL is a limited liability partnership whose citizenship for purposes of 28 U.S.C. § 1332(a)(2) is determined by the citizenship of each of its partners. Upon information and belief, each partner of BAL is a citizen of a State of the United States, no partner is a citizen or subject of a foreign state, and no partner is a United States citizen domiciled outside the United States. Mr. Pachikoru reserves the right to seek jurisdictional discovery on the citizenship of BAL's partners following BAL's Rule 7.1(a)(2) disclosure.

8. This Court has personal jurisdiction over BAL. BAL transacted business and contracted to supply services in the Commonwealth of Massachusetts, and by acts and omissions both within and outside the Commonwealth caused tortious injury to Mr. Pachikoru in the

Commonwealth while regularly doing business and engaging in a persistent course of conduct here. Massachusetts General Laws ("M.G.L.") c. 223A, § 3(a)–(d). BAL thereby purposefully availed itself of the privilege of conducting activities in Massachusetts; Mr. Pachikoru's claims arise out of and relate to BAL's Massachusetts contacts; and the exercise of jurisdiction over BAL is reasonable.

a. BAL maintains an office in Boston, Massachusetts. BAL staffed Mr. Pachikoru's matters with attorneys admitted to practice in Massachusetts — Ms. McGill, the attorney BAL designated as responsible for those matters, who practiced from BAL's Boston office, together with Ms. E. Lee and Ms. Schaaf. Throughout the representation BAL corresponded with Mr. Pachikoru by email, by videoconference, and through its Cobalt portal while he resided and worked in Massachusetts; prepared and filed on his behalf immigration applications identifying a Massachusetts worksite; and shipped his H-1B approval packet to his Massachusetts address in July 2023.

b. BAL's Massachusetts-directed conduct did not end there. Between May 2025 and April 2026, BAL corresponded with Mr. Pachikoru, then a Massachusetts resident — through his then-counsel from May through July 2025, and directly with him, proceeding pro se, in March and April 2026 — concerning the client file generated by that representation, and refused to deliver that file to him (¶¶ 68–83). BAL conducted that correspondence through its attorneys, including Mr. Curtis, who is admitted to practice in Massachusetts, and directed it to Mr. Pachikoru in Massachusetts. That conduct concerned obligations arising from, and continuing after, the representation.

c. Each claim asserted herein arises directly out of, and relates to, the Massachusetts-directed contacts described in subparagraphs (a) and (b).

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because BAL is the sole defendant and resides in this District:

a. BAL is an entity subject to this Court's personal jurisdiction with respect to this action, and therefore resides here for venue purposes. 28 U.S.C. § 1391(c)(2).

b. Furthermore, venue is independently proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

i. BAL's representation of Mr. Pachikoru was directed into Massachusetts;

ii. BAL's communications with Mr. Pachikoru and with Vertex were directed into Massachusetts;

iii. The LCA underlying Mr. Pachikoru's H-1B petition identified a Massachusetts worksite;

iv. BAL's refusal to deliver Mr. Pachikoru's client file was communicated to him in this District; and

v. The harms Mr. Pachikoru sustained — the loss of his lawful work authorization and of his lawful ability to remain in the United States — were sustained in this District.

10. Pursuant to Local Rule 40.1(g), Mr. Pachikoru designates as a related civil case *Pachikoru v. Vertex Pharmaceuticals Inc.*, Civil Action No. 4:25-CV-40184-MRG (D. Mass.) (Guzman, J.), which is presently pending in this Court.

a. The two actions share a common party, Mr. Pachikoru. L.R. 40.1(g)(1)(A).

b. The two actions arise out of the same occurrences and transactions and involve substantially similar issues of fact. L.R. 40.1(g)(1)(B)(i)–(ii). Both concern the same LCA, the same H-1B petition, the same May 4, 2023 RFE and the response filed to it, and the same joint representation by BAL, and both will draw on substantially overlapping witnesses and documents, including BAL personnel and BAL's files.

c. Assignment to the Central Division is proper under Local Rule 40.1(d)(1)(C) because Mr. Pachikoru, the only party residing in Massachusetts, resides in Worcester County, which constitutes the Central Division of this District. L.R. 40.1(c)(2).

## IV. TIMELINESS, DISCOVERY RULE, AND CONTINUING REPRESENTATION

11. Massachusetts applies a three-year limitations period to "[a]ctions of contract or tort for malpractice, error or mistake against attorneys," M.G.L. c. 260, § 4, and to related tort claims, id. § 2A. Under the discovery rule, such a claim does not accrue until the client sustains appreciable harm as a consequence of the attorney's conduct and knows, or reasonably should know, that the harm was so caused.

12. Each claim asserted herein is timely under that standard:

**ACCRUAL**

a. The harm on which the claims herein rest — forfeiture of Mr. Pachikoru's eligibility to extend H-1B status in one-year increments beyond the six-year statutory maximum — did not exist until December 7, 2024, the date on which the qualifying-filing window under AC21 § 106(a) closed with no PERM and no

immigrant petition filed on his behalf. Until that date the eligibility remained available and could have been preserved by a filing BAL was engaged to make.

**KNOWLEDGE**

b. Mr. Pachikoru first learned that a filing had been required by December 7, 2024, and that the date had passed, on January 15, 2025, when Ms. McGill disclosed it to him in writing. No communication BAL transmitted to him before that date identified the date, its significance, or its lapse.

i. As to BAL's classification of his position and its handling of the May 4, 2023 RFE, Mr. Pachikoru did not receive or review the RFE until the June 17, 2025 FOIA production, and has never received the response BAL filed in his name or any version of the worksheet underlying it.

ii. Mr. Pachikoru's May 9, 2023 inquiry regarding the "project management specialist" classification did not give him knowledge of the facts underlying these claims. He asked BAL, in writing, whether his regulatory-affairs credentials should also be listed. BAL answered that the project-management classification "aligned with the day to day duties" and was "a natural fit," and instructed him to confine his worksheet responses to his project-management degree. BAL did not disclose that the classification it had selected placed the position in an occupational group materially different from the one within which the position's duties fell. Mr. Pachikoru had no basis independent of BAL's advice on which to evaluate that answer, and he relied on it.

iii. Mr. Pachikoru's awareness that his H-1B petition was valid through December 6, 2025 was not awareness of the December 7, 2024 qualifying-filing date under AC21 § 106(a) or of its consequence. The two dates arise under different provisions, fall a year apart, and the second was disclosed to Mr. Pachikoru for the first time on January 15, 2025.

iv. Mr. Pachikoru has no legal training and depended on BAL for knowledge of the immigration laws, deadlines, and filing strategies governing his status; he could not have discovered those facts earlier through reasonable diligence.

v. Ms. McGill's August 23, 2024 statements regarding BAL's obligations to Vertex did not disclose to Mr. Pachikoru the existence of a conflict of interest, and Mr. Pachikoru did not understand them to describe one. He is not an attorney, had no knowledge of the professional obligations governing a joint representation, and had no basis independent of BAL's advice on which to assess what those statements meant for his own position (¶ 21). Nine days later BAL presented him the DCJR for re-execution, representing in writing that BAL was "not aware of any potential or actual conflict of interest" (¶¶ 16(b), 18, 60), and BAL neither gave him the conflict notification nor effected the withdrawal that the same document provides would follow an actual conflict (¶¶ 16(e), 17, 84). At no time before January 15, 2025 did BAL disclose that any consequence to Mr. Pachikoru's own eligibility had followed from the strategy BAL had adopted (¶¶ 54, 58(e)–(f), 60–63).

vi. In any event, no limitations period could have commenced in August 2024. The harm on which the claims herein rest did not exist until December 7, 2024 (¶ 12(a)). A claim does not accrue before appreciable harm has been sustained, whatever the client may have observed earlier.

**CONTINUING REPRESENTATION**

c. BAL's representation of Mr. Pachikoru under the DCJR — executed April 6, 2023, and again September 1, 2024 — was a single, continuous engagement encompassing the H-1B petition, the RFE response, and the permanent-residency matter: successive stages of one subject, namely Mr. Pachikoru's authorization to work and remain lawfully in the United States through Vertex's sponsorship.

i. BAL continued to advise Mr. Pachikoru in that engagement through at least March 17, 2025, and at no time notified him of any withdrawal from, or termination of, its representation of him.

ii. The limitations period did not run while that representation continued and Mr. Pachikoru reasonably relied upon it.

**CLIENT FILE REFUSAL**

d. BAL's March 31 through April 2, 2026 refusal to deliver Mr. Pachikoru's client file is separate and independent conduct occurring within any limitations period potentially applicable. M.G.L. c. 260, §§ 2, 2A, 4.

13. Independently, the limitations period is tolled under M.G.L. c. 260, § 12.

a. Throughout the engagement BAL stood in a fiduciary relationship to Mr. Pachikoru as his counsel under an express written joint representation, DCJR (¶ 16). BAL possessed, and did not disclose to him, the facts giving rise to the

claims asserted herein — including the December 7, 2024 date and its significance under AC21 § 106(a), the contents of the May 4, 2023 RFE, and the contents of the response BAL filed in his name.

b. Where a fiduciary fails to disclose facts it has a duty to disclose, that failure constitutes concealment within the meaning of § 12 without proof of any affirmative act of concealment.

c. BAL is likewise estopped from asserting a limitations defense founded upon its own conduct. BAL represented to Mr. Pachikoru's then-counsel on July 3, 2025 that the NIW materials had been "previously shared directly with Kranthi," which was untrue (¶¶ 70, 72); represented to Mr. Pachikoru on April 2, 2026 that BAL was "not refusing to provide your file," while conditioning delivery upon the written consent of the party adverse to him or "an appropriate court order," and undertaking in writing that BAL "will comply with instructions either from Vertex and its counsel or the court" (¶¶ 77, 79); and throughout retained exclusive possession of the response filed in his name and the worksheets underlying it (¶¶ 47, 67, 82). Mr. Pachikoru reasonably relied upon those statements, and by this action seeks, among other relief, the very order BAL named as the condition of delivery and undertook to obey (¶¶ 79, 81). Having conditioned delivery of Mr. Pachikoru's own client file upon a court order while withholding the documents on which the claims rest, BAL may not assert the resulting passage of time as a defense.

## V. STATEMENT OF FACTS

**Part I — The Joint Attorney-Client Relationship**

14. On or about April 5, 2023, BAL opened on Mr. Pachikoru's behalf an H-1B nonimmigrant petition matter, identifying him as the beneficiary "Principal - Kranthi Sagar Pachikoru (636457)"[1].

15. On April 6, 2023, Mr. Pachikoru executed BAL's DCJR (See **Exhibit A**).

16. The DCJR, drafted by BAL, provides, in pertinent part:

 a. In its opening paragraph, regarding the scope of the joint representation and BAL's independent judgment:

> "Berry Appleman & Leiden LLP (BAL) has been retained for the purpose of representing you, the beneficiary, your spouse and/or other family members (if applicable), and your U.S. employer sponsor ('the Company') . . . in preparing and filing one or more applications or petitions related to an immigration benefit for you through the Company's sponsorship. If the Company is compensating BAL for this representation, this fact will not interfere with BAL's independent judgment in your case or with the client-lawyer relationship with you and/or your family members."

 b. Regarding conflicts of interest and waiver:

> "At present, we are not aware of any potential or actual conflict of interest; however, it is possible that at some future time your interests could come into conflict with the interests of the Company; and in consenting to joint representation, you expressly waive any such conflict."

 c. Regarding circumstances in which a conflict could arise:

> "a conflict of interest could arise if the Company terminates your employment or if you resign, resulting in your

---

[1]BAL Matter ID: 12140.758.1

> inability to obtain an immigration benefit through the Company's sponsorship."

d. Regarding attorney-client privilege among the joint clients:

> "Any communications made during the course of our relationship with you, your family members, or the Company may not be subject to a claim of attorney-client privilege in a civil proceeding between you and the Company."

e. Regarding notification and withdrawal upon an actual conflict:

> "If an actual conflict of interest arises during the course of our joint representation, we will notify both you and the Company of such conflict and take appropriate action, which would likely include withdrawal of our representation of you and your family members, if applicable."

f. Under the heading "Data and File Retention Notice," regarding retention and delivery of the client file:

> "After our services conclude, BAL will, as a courtesy to you, make its best efforts to retain the personal data you have provided and a copy of your file for a period of seven (7) years. At the end of said period, we may, at our discretion, destroy such personal data and file without notice to you. At any point during the retention period, you may request delivery of a copy of your file. However, please note that there may be a fee charged to retrieve the file and deliver it to you."

17. The DCJR provides, under the heading "Notice Regarding Changes in Employment," that in the event the applicant ceases to be employed, "BAL reserves the right to withdraw as attorney of record and cease to represent you and all family members." BAL never exercised that right as to Mr. Pachikoru and never notified him of any withdrawal from, or termination of, its representation of him.

18. On September 1, 2024, in connection with Mr. Pachikoru's permanent-residency matter, Mr. Pachikoru executed BAL's DCJR a second time (See **Exhibit B**).

19. At all relevant times, Vertex paid BAL's fees for the matters described herein, including BAL matter IDs 12140.758.1–6. The DCJR provides that such payment "will not interfere with BAL's independent judgment in your case or with the client-lawyer relationship" with Mr. Pachikoru.

20. At all times relevant to the conduct alleged herein, the BAL attorney designated as responsible for Mr. Pachikoru's matters was Ms. McGill. Other BAL attorneys and personnel who corresponded with Mr. Pachikoru regarding his matters included Ms. E. Lee, Ms. Schaaf, Erika Von Den Benken ("Ms. Benken"), Brent Persun ("Mr. Persun"), Maareg Mekonnen ("Ms. Mekonnen"), and Abigail Foster ("Ms. Foster").

21. Mr. Pachikoru is not an attorney and has no legal training. At all relevant times, Mr. Pachikoru depended on BAL, as his counsel under the joint representation, for knowledge of the immigration laws, deadlines, and filing strategies governing his status, and reasonably relied on BAL's advice and on BAL's undertaking to keep him informed.

**Part II — BAL's Filing of Mr. Pachikoru's H-1B Petition**

22. Mr. Pachikoru received a notification on April 20, 2023, at 5:21 PM Eastern Time, that the H-1B petition (Change-Of-Employer) had been submitted to USCIS; USCIS received the petition on April 21, 2023.

    a. The Form I-129 BAL: At Part 8, Ms. McGill executed the form's Preparer's Declaration — certifying "under penalty of perjury" that she prepared the petition and that "[t]he petitioner has reviewed this completed petition" — a declaration reciting review by the petitioner only; at Part 7, where the petitioner's authorized

signatory certified the petition, the "Signatory's Contact Information" fields list Ms. McGill's contact information (See **Exhibit C**, Parts 7 and 8).

b. On the LCA: I-200-23101-920831[2] underlying the H-1B petition — prepared by BAL and certified by the United States Department of Labor ("US DOL" or "DOL") on April 18, 2023 — BAL selected SOC code 13-1082.00[3], "Project Management Specialists," for Mr. Pachikoru's offered position (See **Exhibit D,** Section B, Item 2 and 3). On the same LCA, at Section B, Item 1, BAL entered the job title of the offered position as "GMP Operational Quality Manager" (See **Exhibit D**, Section B, Item 1).

c. On the H-1B Data Collection and Filing Fee Exemption Supplement to the Form I-129 that BAL filed on Mr. Pachikoru's behalf, BAL entered at Section 1, Item 3 ("Major/ Primary Field of Study") "Project Management," and at Section 1, Item 5 the Dictionary of Occupational Titles ("DOT") code "030" (See **Exhibit C-1**). USCIS's own schedule of DOT codes for the Form I-129, Form M-746 (See **Exhibit E**)[4], lists code "030" as "Occupations In Systems Analysis and Programming," under the heading "Computer-Related Occupations," together with codes 031 through 039, the last of which is captioned "Other Computer-Related Occupations." The same schedule lists separate occupational groups for chemistry, life sciences, etc.

d. The proposed duties BAL submitted in support of the petition described a pharmaceutical quality-assurance position — deviation and out-of-specification

[2]BAL Matter ID: 12140.758.2 (April 6, 2023 - April 27, 2023).
[3]https://www.bls.gov/ooh/business-and-financial/project-management-specialists.htm#tab-2; and https://www.onetonline.org/link/details/13-1082.00.
[4]USCIS Form M-746 for filing the H-1B Petition (Form I-129) "I-129 Dictionary of Occupational Titles (DOT) Codes". https://www.uscis.gov/sites/default/files/document/forms/m-746.pdf.

investigations, corrective and preventive action (CAPA), change-control assessments, quality agreements with contract manufacturers, authorship of standard operating procedures, and support of regulatory-agency inspections (See **Exhibit C-1**).

e. The Form I-797C Notice of Action USCIS issued for the petition, records the same code, "030," in the field captioned "OCC" (See **Exhibit F**)[5] The DOT code BAL entered on the Supplement thus appears on the face of the notice USCIS issued in Mr. Pachikoru's name. Mr. Pachikoru is not, and at no time relevant to this Complaint was, employed or qualified as a computer systems analyst or a computer programmer[6].

23. The DOL's occupational taxonomy defines SOC/O*NET code 11-3051.01, "Quality Control Systems Managers," as: "Plan, direct, or coordinate quality assurance programs. Formulate quality control policies and control quality of laboratory and production efforts," with reported job titles including "Quality Assurance Manager (QA Manager)" and "Quality Control Manager (QC Manager)."[7]

a. The Vertex requisition under which Mr. Pachikoru was recruited and hired, REQ-17609 (the "REQ-17609 position"), was titled "Manager, GMP Operational Quality" (See **Exhibit G).** The duties of that position — advanced application of pharmaceutical-science and federal drug-manufacturing regulatory principles in a GMP quality-assurance role — fall within the definition of SOC/O*NET code

---

[5]Occupational Classification Code ("OCC") on the Receipt Number IOE8429937781.
[6]https://www.bls.gov/ooh/computer-and-information-technology/computer-systems-analysts.htm#tab-2; https://www.onetonline.org/link/details/15-1211.00 (Computer Systems Analysts); and https://www.onetonline.org/link/details/15-1251.00 (Computer Programmers).
[7]https://www.bls.gov/ooh/management/industrial-production-managers.htm#tab-2; and https://www.onetonline.org/link/details/11-3051.00; and https://www.onetonline.org/link/details/11-3051.01.

11-3051.01, as does the job title BAL itself entered on the LCA, "GMP Operational Quality Manager."

b. The code BAL selected and entered on the LCA — 13-1082.00, "Project Management Specialists" — is defined as: "Analyze and coordinate the schedule, timeline, procurement, staffing, and budget of a product or service on a per project basis," a materially different occupational classification from the one within which the REQ-17609 position's bona fide duties fell.

c. An H-1B classification is position- and duties-specific: the petition must establish that the specific position offered is a "specialty occupation" — one requiring the theoretical and practical application of a body of highly specialized knowledge and attainment of a degree in the specific specialty — and the LCA must state the occupational classification in which the beneficiary will be employed.[8]

d. The single petition BAL prepared and filed on Mr. Pachikoru's behalf thus described his pharmaceutical quality-assurance position in three different terms, none of which was the occupational classification within which the REQ-17609 position's bona fide duties fell: as "Project Management Specialists," SOC 13-1082.00, on the certified LCA; as a position whose primary field of study was "Project Management," on the Supplement; and as an occupation in systems analysis and programming, DOT code "030," on the Supplement and on the resulting Form I-797C. The project-management entries and the

[8]See 8 U.S.C. § 1184(i)(1) (defining "specialty occupation"); 8 C.F.R. § 214.2(h)(4)(ii) (same), (h)(4)(iii)(A) (position criteria), (h)(4)(iii)(C) (beneficiary qualifications); 8 C.F.R. § 214.2(h)(4)(i)(B)(1) (the petitioner must obtain a certified labor condition application "in the occupational specialty in which the alien(s) will be employed"); 20 C.F.R. § 655.730(c)(4) (the LCA must state the occupational classification in which the H-1B nonimmigrant will be employed).

computer-occupation entry are inconsistent with each other as well as with the position.

24. On April 24, 2023, BAL transmitted to Mr. Pachikoru the USCIS premium-processing receipt notice corresponding to USCIS Receipt No: IOE8429937781.

25. Mr. Pachikoru reasonably relied on, among other things: (i) BAL's April 20, 2023 filing of the H-1B transfer petition; (ii) BAL's April 24, 2023 transmittal of the USCIS premium-processing receipt notice; (iii) Ms. McGill's May 4, 2023 representation that the RFE was "not specific to you or your credentials"; and (iv) Ms. McGill's May 4, 2023 representation of the denial risk as "quite small". In reliance on each of the foregoing, Mr. Pachikoru resigned from his prior employer — where he held lawful H-1B status — and commenced employment with Vertex on May 22, 2023. At that time, the May 4, 2023 RFE targeting his role and credentials remained pending and unadjudicated; the petition was not approved until July 10, 2023.

**Part III — BAL's Pre-RFE Instruction and Its May 4, 2023 Reversal**

26. On April 24, 2023, at 12:12 PM Eastern Time, BAL, through Mr. Persun, responded to Mr. Pachikoru's inquiry whether he was required to await the approval notice before starting (See **Exhibit H**). BAL's response stated, in pertinent part:

> "I spoke with Jennifer and the legal team, and they confirmed that you will need to await adjudication before starting employment. Because your case was filed under Premium Processing, you will receive an email decision before you receive the physical approval notice. The email decision will be sufficient."

**Part IV — BAL's Refusal to Share the USCIS RFE with Mr. Pachikoru**

27. On May 4, 2023, USCIS issued an RFE on Mr. Pachikoru's H-1B petition, setting a response deadline of July 30, 2023[9].

28. On May 4, 2023, at 9:09 AM Eastern Time, Mr. Pachikoru wrote to BAL personnel Ms. Benken and Ms. McGill, with copy to Vertex personnel:

> "An RFE was issued on my petition when I checked this morning. Can you share a copy of the RFE and what you would require from my end to resolve this issue? Additionally, can you consult with Vertex on the employment start date, given this scenario, and provide me an update?"

29. On May 4, 2023, at 10:24 AM Eastern Time, Ms. McGill responded by email to Mr. Pachikoru. Ms. McGill's response stated, in pertinent part:

> "Our team received a fax of the RFE this morning – it is a typical specialty occupation request for evidence from USCIS. These are very common for certain categories of roles and your position is one of them – it is not specific to you or your credentials. The government is seeking more information from Vertex that the offered role requires a degree and wants greater detail about the role. Likely we will not need much, if any, additional input from you. We will put together the request for detail for your manager at Vertex to complete and aim to file the response promptly. I note that any H-1B change of employer petition is eligible to begin working upon USCIS receiving the petition so this does not impact your proposed start date unless you were awaiting the final approval notice for starting. If you are awaiting the final approval notice, this will push the start date out 1 – 2 months as we need to work to gather the requested detail, draft and submit the reply, and then await final adjudication in the 15 days after submitting response."

---

[9]BAL Matter ID: 12140.758.3 (May 4, 2023 - July 10, 2023).

30. Ms. McGill did not attach a copy of the May 4, 2023 RFE to her May 4, 2023 10:24 AM response, and did not include in that response either a verbatim recitation of the RFE's contents or a summary of the RFE's specific evidentiary requests.

31. On May 4, 2023, at 10:40 AM Eastern Time, Ms. E. Lee transmitted to Mr. Pachikoru a document BAL referred to as the "RFE Worksheet," with the instruction: "work on the attached worksheet with your manager at Vertex." The RFE Worksheet solicited information regarding Mr. Pachikoru's job duties and their correlation to his education, training, and credentials.

32. On May 4, 2023, at 11:09 AM Eastern Time, Mr. Pachikoru wrote a separate email message to Mr. Persun:

> "Hi Brent – Thank you for the email. Would you/the firm be able to share a copy of the RFE with me?"

33. On May 4, 2023, at 11:14 AM Eastern Time, BAL, through Mr. Persun, responded by email to Mr. Pachikoru. BAL's response stated, in pertinent part:

> "Per company policy, the RFE is not shared with employees. The legal team will work with your company to determine the best strategy for response."

34. On May 4, 2023, at 11:16 AM Eastern Time, Ms. McGill wrote to Vertex personnel and to Mr. Pachikoru, in pertinent part:

> "It's a very standard RFE, we can begin our work to respond and in the interim Kranthi may opt to start his employment at his convenience since we have the receipt notice from USCIS he can use for the I-9 process. There remains a risk (quite small) that if USCIS were to deny the petition, he would have left his prior employer and then not have an approved petition with Vertex. Again, I stress this risk is quite small as the RFE for specialty occupation is common and we have template responses that have been successful for many years once we have the manager's feedback."

35. BAL's May 4, 2023 advice that Mr. Pachikoru "may opt to start his employment at his convenience" upon the receipt notice, while the RFE directed to the specialty-occupation basis of his petition remained pending and unadjudicated, differed from BAL's April 24, 2023 instruction that Mr. Pachikoru would "need to await adjudication before starting employment".

36. From May 4, 2023 through the conclusion of BAL's representation of Mr. Pachikoru's H-1B transfer, BAL did not transmit to Mr. Pachikoru a copy of the May 4, 2023 RFE.

**Part V — BAL's May 9, 2023 SOC Code Response To Mr. Pachikoru**

37. On May 9, 2023, at 1:15 PM Eastern Time, Mr. Pachikoru wrote to Ms. E. Lee, with Ms. McGill and other BAL personnel copied, in pertinent part:

> "Before starting, I wanted to confirm since the labor certification has "project management specialist" for SOC. So, do I only list the MS in Project Management (2nd Masters's degree obtained in the USA while on F1) related course work? Or do I also list the MS in Regulatory Affairs (1st Masters's also obtained in the USA on F1), since the "QA Manager" role's job responsibilities (based on the job posting board) also require regulatory & scientific background; making a better/stronger response for evidence."

38. On May 9, 2023, at 3:40 PM Eastern Time, Ms. McGill responded by email to Mr. Pachikoru.

a. Ms. McGill's response stated, in pertinent part:

> "The H-1B filing / Labor Condition Application only allows us to categorize your role with one SOC code. We acknowledge that your regulatory affairs degree is relevant but the offered position did not require a degree in regulatory affairs, so we could not state in the H-1B materials that a degree in that field was required. Further, when we have used the SOC code for regulatory affairs specialists we often receive requests for evidence because that SOC falls into an 'all other' category. The project management

> specialist role aligned with the day to day duties and where you had the degree in project management it was a natural fit."

b. The same response closed with the instruction:

> "Kindly keep your responses on the worksheets related to that second master's in project management rather than your primary/earlier master's in regulatory affairs."

39. Ms. McGill's May 9, 2023 response did not disclose that the selected code placed the position in an occupational classification materially different from the one within which its bona fide duties fell, and did not advise Mr. Pachikoru of any risk that a certified classification inconsistent with his bona fide duties could affect the accuracy of the petition or of subsequent immigration filings made on his behalf.

**Part VI — BAL's May 15, 2023 Refusal to Share the Completed RFE For Review**

40. On May 15, 2023, at 1:19 PM Eastern Time, Mr. Pachikoru transmitted the completed RFE Worksheet by email to Ms. McGill, Ms. E. Lee, and other BAL personnel (See **Exhibit I**). Mr. Pachikoru's transmittal stated, in pertinent part:

> "I have compiled the RFE worksheet, attached here, as instructed, and included a few comments . . . . Moreover, could you share this finalized worksheet with me before submitting it as a part of RFE."

41. On May 15, 2023, at 1:45 PM Eastern Time, Ms. McGill responded by email to Mr. Pachikoru. Ms. McGill's response stated, in pertinent part:

> "I note we do not share the completed worksheet with you as part of the process – rest assured we have received a number of specialty occupation RFEs from USCIS and our response format is a strong one. We do not share the worksheet with USCIS either – rather, it is a foundational document we use for crafting the updated letter for Vertex's review and signature and also our cover memo."

42. Between May 15, 2023 and July 3, 2023, BAL did not transmit to Mr. Pachikoru any subsequent draft of the RFE Worksheet, any draft of the RFE response letter, or any other document BAL intended to file or filed with USCIS in Mr. Pachikoru's name in response to the May 4, 2023 RFE (¶¶ 45(e), 47).

43. On June 2, 2023, at 11:52 AM Eastern Time, Ms. E. Lee wrote to Mr. Pachikoru and Ms. McGill, with Vertex personnel copied (See **Exhibit J**), in pertinent part:

> "Your Manager has provided us with the worksheet and we had further comments we needed your Manger [sic] to elaborate on. Your manager should be reaching out to you to complete the worksheet on the details needed from you. We understand that you provided us with your version of the worksheet, but we would need to work off the worksheet your manager completed so if your manager provides you with the worksheet to complete, please update it on your manager's worksheet to ensure we are all looking at 1 document."

**Part VII — BAL's RFE Submission and H-1B Petition Approval**

44. On June 14, 2023 at 5:05 PM Eastern Time, Mr. Pachikoru followed up with BAL and Vertex on the RFE response. On June 23, 2023, at 2:17 PM Eastern Time, Mr. Pachikoru's then-manager at Vertex — not BAL — transmitted to Mr. Pachikoru a document titled "Kranthi Sagar Pachikoru RFE Manager Letter," a support-letter component of the anticipated RFE response, with a one-sentence message: "Final form that was sent to the lawyers."

a. Neither Mr. Pachikoru's then-manager nor BAL requested Mr. Pachikoru's review of, comment upon, or approval of the letter, then or thereafter, and Mr. Pachikoru was afforded no opportunity to review, comment upon, or approve it before its transmission to BAL or before BAL's filing of the RFE response.

b. The letter described job duties materially different from the position for which Mr. Pachikoru had been recruited and hired under REQ-17609, including product-disposition and system-implementation responsibilities in Vertex's OPM[10] that were not part of Mr. Pachikoru's bona fide role and did not appear in the proposed duties BAL submitted in support of the H-1B petition.

c. The letter identified "Project Management" as the qualifying field of study and Mr. Pachikoru's Master of Science in Project Management as the qualifying degree for the position, while its description of the position's duties repeatedly invoked Mr. Pachikoru's pharmaceutical-sciences and regulatory-affairs education, including the statement that the position requires a "[c]ombination of education (Multiple pharm degrees and Reg degree, and project management)."

d. The letter stated, in pertinent part, that "[a] qualified candidate hired for this position is expected to act independently," that "[i]n our business, we simply cannot afford to train a candidate for entry into this position," and that "the specialized knowledge required for entry into this particular position is only attainable through the completion of a bachelor's degree or its equivalent" — while identifying Mr. Pachikoru's Master of Science in Project Management as the source of that specialized knowledge and describing duties requiring, in the letter's own words, "an in-depth knowledge of GMPs, Regulatory Guidance Documents and Quality by Design approach."

e. Consistent with its June 2, 2023 statement that it "would need to work off the worksheet your manager completed" (¶ 43), BAL in conjunction with Vertex

[10] OPM is the inventory-management and product-disposition system used by Vertex; the Manager Letter refers to it as "the Inventory Management System (OPM)."

prepared and submitted the RFE response to USCIS; BAL has never produced to Mr. Pachikoru the worksheet or worksheets it in fact used (¶ 47(a)).

45. On June 27, 2023:

a. At 6:57 AM Eastern Time, Mr. Pachikoru wrote to Ms. E. Lee, Ms. McGill, and Ms. Benken, copying Vertex global mobility personnel (See **Exhibit K**), in pertinent part:

> "[W]e are drawing close to the deadline for RFE submission, checking to see if we are all set."

b. At 8:17 AM Eastern Time the same day, Ms. E. Lee replied that Mr. Pachikoru's RFE response "has been drafted" and that BAL was awaiting a "Signed RFE support letter – from Vertex" and a "Professor Expert Opinion letter – from 3rd party vendor."

c. At 3:29 PM Eastern Time, Mr. Pachikoru asked:

> "is there something I can do to expedite this?" and "do you feel that we are on the path to submission, on or ahead of time?"

d. At 3:34 PM Eastern Time:

i. Ms. E. Lee replied, in pertinent part:

> "We received the signed RFE letter from Vertex today, so all we are waiting for is the third party vendor to provide us with the professor expert opinion letter. Once we have that, we will be finalizing the Request for Evidence. At this time, no further action is needed on your end."

ii. Ms. E. Lee added:

> "Currently we are good as the RFE has already undergone attorney review and all we need is the professor expert opinion letter."

e. In that exchange, BAL did not transmit to Mr. Pachikoru, or invite Mr. Pachikoru's review of, the drafted response, the signed Vertex support letter, or the expert-opinion letter.

46. On July 3, 2023, BAL submitted the response to the May 4, 2023 RFE to USCIS. At 10:07 AM Eastern Time that day, BAL notified Mr. Pachikoru that "today we submitted the response to the Request for Evidence issued for the H-1B case filed on your behalf".

47. BAL did not at any time provide to Mr. Pachikoru, for review or approval, the RFE response, the expert-opinion letter, or any other document BAL submitted to USCIS in Mr. Pachikoru's name, and did not obtain Mr. Pachikoru's review, approval, or consent before filing.

a. Because BAL has never produced the filed response or the underlying worksheets to Mr. Pachikoru, and because the contents of that filing are peculiarly within BAL's knowledge and control, Mr. Pachikoru cannot confirm whether the response BAL filed on July 3, 2023 matched the June 23, 2023 version or was further revised.

b. On information and belief, the filed response described Mr. Pachikoru's duties and qualifications in terms materially different from his bona fide role and from the worksheet he submitted on May 15, 2023.

48. On July 10, 2023, at 1:19 PM Eastern Time, Ms. McGill notified Mr. Pachikoru via email that USCIS had approved Mr. Pachikoru's H-1B petition. The approved H-1B was valid through December 6, 2025 (See **Exhibit L**)[11]. At no time after the approval did BAL amend or correct the OCC/ DOT code it had entered, or advise Mr. Pachikoru that correction was available. On or about July 18, 2023, BAL shipped to Mr. Pachikoru's

[11] I-94 Record: 214606884 A3 (H-1B Petition's Visa U5958738; and Expiration Date: December 6, 2025).

Massachusetts address an approval packet, under a BAL cover letter dated July 18, 2023, enclosing the original Form I-797[12].

**Part VIII — BAL's Recommendation to Defer Mr. Pachikoru's PERM**[13]

49. On July 18, 2023, at 1:30 PM Eastern Time, the Vertex employee responsible for global mobility and immigration wrote to Mr. Pachikoru and other Vertex personnel. The communication stated, in pertinent part:

> "However, it was reviewed during the immigration pre-assessment phase that Kranthi's green card support would likely need to start in advance of meeting the eligibility requirements due to the remaining time on his H1B. I just reviewed with BAL and their recommendation is to revisit the green card initiation at the end of 2023 – we can then obtain the required approvals and forms and look to initiate BAL's support in January 2024."

50. The July 18, 2023 communication conveying BAL's recommendation that initiation of Mr. Pachikoru's permanent-residency sponsorship be deferred to January 2024 was not transmitted to Mr. Pachikoru directly by BAL. The recommendation was conveyed by BAL to Vertex personnel and from Vertex personnel to Mr. Pachikoru.

51. Between July 18, 2023 and July 3, 2024, BAL did not transmit to Mr. Pachikoru any communication advising that its recommendation to defer initiation of Mr. Pachikoru's permanent-residency sponsorship would, or might, compress the time available to complete the multi-step PERM[14] process before the six-year statutory maximum applicable to Mr. Pachikoru's H-1B status under Immigration and Nationality Act ("INA") § 214(g)(4), 8 U.S.C. § 1184(g)(4). On July 24, 2024, at 3:15 PM Eastern Time,

---

[12]BAL Matter ID: 12140.758.4 (July 17, 2023).

[13]Not to be confused with the Program Electronic Review Management (PERM) used by the Foreign Labor Certification ("OFLC") office's Foreign Labor Application Gateway ("FLAG") system.

[14]Drafting A Job Description, Prevailing Wage Determination ("PWD" or "ETA Form-9141"), Recruitment Phase, Labor Certification ("PERM" or "LC" or "ETA Form-9089") with the US DOL; followed by filing the Form I-140 with the USCIS.

the Vertex employee responsible for global mobility and immigration (¶ 49) wrote to Ms. McGill, copying Mr. Pachikoru: "Kranthi's case was initiated on July 3 – please confirm that you have everything needed to move forward?" Ms. McGill's communication alleged in ¶ 52 followed twelve minutes later (See **Exhibit M**).

**Part IX — Initiation of Mr. Pachikoru's Permanent-Residency Matter**

52. On July 24, 2024, at 3:27 PM Eastern Time, Ms. McGill wrote to Mr. Pachikoru and Vertex global mobility personnel. Ms. McGill's communication stated, in pertinent part:

> "[W]e can opt to proceed with a standard Labor Certification process for you, which involves testing the labor market and at the moment takes approximately 2 years to complete. Alternatively, where you hold an advanced degree we could look to potentially seek a National Interest Waiver application, jumping right to filing the I-140 with USCIS....If you prefer us to consider the NIW option, please complete the attached worksheet. If you prefer us to proceed with the PERM process, please let us know and we will open and assign those questionnaires to you and your manager promptly."

**Part X — BAL's August 2, 2024 Disclosure of PERM Timeline**

53. On August 2, 2024, at 8:56 AM Eastern Time, Ms. McGill wrote to Mr. Pachikoru, in pertinent part:

> "Option 1 – if we proceed with NIW and you complete the worksheet, we aim to file NIW petitions within 2-3 months, based on your obtaining reference letters from people in your field / former colleagues and supervisors attesting to your contributions to the field and your likelihood to continue to move the proposed endeavor forward."
>
> "Option 2 – if we proceed with the PERM the current timelines are:
>
> - A few weeks to coordinate with you and your manager on the offered job description

- 6-7 months for the prevailing wage determination to come back from DOL once we submit the job description to the agency;
- 2-3 months for the recruitment
- Once submitted, DOL is taking 12-14 months to certify PERMs. The key date is for us to submit the PERM while you still have at least 1 year of H-1B time remaining, arguably 8-10 months from now in best case scenario, assuming no qualified U.S. workers are located."

54. Ms. McGill's August 2, 2024 communication did not state, and at no time between July 24, 2024 and January 15, 2025 did BAL state in any communication to Mr. Pachikoru, that a PERM filing would have had to be made by December 7, 2024 in order to preserve Mr. Pachikoru's eligibility to extend H-1B status in one-year increments beyond the six-year statutory maximum under AC21 § 106(a).

**Part XI — BAL's Pivot from PERM to the EB-2 NIW**

55. On August 20, 2024, at 11:43 AM Eastern Time, Mr. Pachikoru wrote to Ms. McGill and Vertex personnel.

a. In pertinent part:

> "[W]e may want to pursue a regular petition and get started on the 'NIW' process, as well."

b. Mr. Pachikoru's reference to a "regular petition" was to the PERM-based pathway, and his reference to the "NIW" was to the EB-2 NIW; he asked that the two proceed in parallel.

c. In the same communication, Mr. Pachikoru wrote: "[g]iven all the delays with the USCIS, I don't believe sufficient time is left for a regular petition." That statement addressed whether a PERM could be completed before his H-1B time ran — the only significance BAL's July 24 and August 2, 2024 communications

had attributed to the timing of a PERM (¶¶ 52–53), and the framing Ms. McGill herself repeated on August 23, 2024 (¶ 58(d)). Mr. Pachikoru was not then aware of the December 7, 2024 date, or that a PERM filed on or before it — though not completed — would independently preserve his eligibility under AC21 § 106(a) (¶¶ 54, 58(e), 62–63); and in the same email he asked that the PERM pathway proceed alongside the EB-2 NIW (sub-paragraphs (a)–(b), above).

56. On August 21, 2024, at 2:50 PM Eastern Time, having received no substantive response since the July 24, 2024 pathway discussion, Mr. Pachikoru wrote to Ms. McGill, with Vertex personnel copied, following up on the status of his permanent-residency matter.

a. His email asked, in pertinent part, whether:

> "Vertex has evaluated or will evaluate or if even able to support this, or if I need to make any arrangements for departure from Vertex in the foreseeable future."

b. Mr. Pachikoru's inquiry was conditional: it asked what his position would be if Vertex proved unwilling or unable to support his permanent-residency sponsorship. When he sent it he remained employed by Vertex, held valid H-1B status, and was awaiting BAL's response to the pathway options BAL had presented on July 24, 2024.

57. On August 21, 2024, at 3:19 PM Eastern Time, Mr. Pachikoru wrote to Ms. McGill and Vertex personnel, in pertinent part:

> "I can share/ fill in information based on the previous email, and the regular petition is in progress, correct?"

58. On August 23, 2024, at 10:00 AM Eastern Time, Ms. McGill conducted a Zoom conference regarding Mr. Pachikoru's permanent-residency strategy — a meeting she

scheduled in response to Mr. Pachikoru's August 21, 2024 inquiry and to which Vertex's global-mobility personnel were invited but did not attend. During the conference:

a. Ms. McGill stated, in substance, that Mr. Pachikoru's first date in H-1B status was in October 2019, and that, accounting for recapturable time Mr. Pachikoru had spent outside the United States, his six-year maximum date computed to on or about December 7, 2025.

b. As to protecting Mr. Pachikoru's long-term work authorization, Ms. McGill stated, in substance, that her concern was submitting a PERM application while Mr. Pachikoru still had one full year of H-1B time remaining, including recapture. She did not identify any operative date for that submission. She referred only to an approximate seasonal range — December 2024, January 2025, or February 2025 — and stated, in substance, that these were estimates and that she had not performed the recapture calculation on which the operative date depended.

c. When Mr. Pachikoru asked BAL to pursue the PERM and EB-2 NIW pathways in parallel, Ms. McGill declined, stating, in substance, that pursuing both would waste Vertex's resources and that BAL owed a fiduciary responsibility to Vertex; she cited labor-market concerns and stated that the matter had previously been raised with Mr. Pachikoru's then-manager. Ms. McGill stated, in substance, that in the days preceding the conference she had discussed and agreed upon Mr. Pachikoru's permanent-residency strategy with Mr. Pachikoru's then-manager at Vertex — to proceed solely under the EB-2 NIW — without Mr. Pachikoru's knowledge or input.

d. Ms. McGill framed the timing of a PERM submission solely as bearing on whether a PERM could be completed in time to preserve Mr. Pachikoru's continuous work authorization, and characterized a PERM commenced in August 2024 as futile on that ground — stating, in substance, that even if BAL started immediately and recruitment located no qualified U.S. workers, the prevailing-wage determination would not return while Mr. Pachikoru still had one year of H-1B time remaining, and that Mr. Pachikoru would in that scenario run out of work authorization.

e. She did not advise Mr. Pachikoru that the filing of a PERM on or before a date certain — even a PERM that could not be completed in time — would independently preserve Mr. Pachikoru's eligibility under AC21 § 106(a) to extend H-1B status in one-year increments, nor that proceeding with the EB-2 NIW alone, absent a filing by that date, would forfeit that fallback. BAL first identified that date, December 7, 2024, and disclosed its § 106(a) significance, in writing on January 15, 2025 — after it had passed.

f. Ms. McGill thus stated at the conference each figure from which the December 7, 2024 date derived — the December 7, 2025 recaptured six-year maximum (sub-paragraph (a), above) and the requirement that a PERM be submitted while at least one full year of H-1B time remained (sub-paragraph (b), above) — yet did not identify December 7, 2024 as the operative date, did not perform or disclose the calculation, and did not disclose the date's significance under AC21 § 106(a).

59. Ms. McGill recommended proceeding solely under the EB-2 NIW. She represented, in substance, that BAL needed approximately two to three months to prepare and file the

EB-2 NIW petition; that the EB-2 NIW petition was to be filed on or before December 2024; and that BAL was working toward a filing before the change of federal administration anticipated in January 2025, which she stated could make NIW adjudication more difficult. On that represented timeline, BAL's own EB-2 NIW filing would have been made before December 7, 2024. Ms. McGill identified December 2024 as a filing target for the EB-2 NIW petition only; she did not identify December 7, 2024, did not tie any date to AC21 § 106(a) or to the one-year-remaining requirement, and did not advise that a qualifying filing — PERM or EB-2 NIW — made on or before December 7, 2024 would independently preserve Mr. Pachikoru's eligibility to extend H-1B status beyond the six-year maximum (¶ 58(e)–(f)).

a. During the same conference, Ms. McGill instructed Mr. Pachikoru to disregard the MS Word worksheets BAL had previously sent him and to complete instead an electronic questionnaire, which she stated BAL would transmit soon after the call.

b. Ms. McGill further stated that, once BAL drafted the EB-2 NIW support letters, BAL would send them to Mr. Pachikoru in draft and would seek his input and expertise.

c. At 10:25 AM Eastern Time that day, BAL electronically transmitted to Mr. Pachikoru an "Immigrant Petition for Alien Worker" questionnaire[15]. The questionnaire pertained to the EB-2 NIW immigrant petition (See **Exhibit N**).

**Part XII — BAL's Silence and Lapse of the December 7, 2024 Qualifying Date**

60. On September 1, 2024 — nine days after the conference — Mr. Pachikoru completed and submitted the questionnaire BAL had electronically transmitted on August 23, 2024 (¶

[15]BAL Matter ID: 12140.758.5.

59(c)), and in doing so executed BAL's DCJR a second time (¶ 18)[16]. Between September 1, 2024 and January 15, 2025 — a period of one hundred thirty-six (136) days — no attorney of BAL transmitted to Mr. Pachikoru any communication regarding the status of his permanent-residency matter, the December 7, 2024 date under AC21 § 106(a), or any change in strategy, timeline, or risk.

61. BAL possessed each of those facts, and knew the rule that gave the December 7, 2024 date its significance, throughout that period — not merely on the date of August 23, 2024 — as Ms. McGill's January 15, 2025 written statement confirms. BAL did not disclose the date, its significance, or its passage to Mr. Pachikoru at any time before January 15, 2025.

**Part XIII — BAL's January 15, 2025 Acknowledgment Regarding the PERM**

62. On January 15, 2025, at 6:43 AM Eastern Time, Ms. McGill wrote to Mr. Pachikoru copying Vertex global mobility personnel. Ms. McGill's communication stated, in pertinent part:

> "We are really under significant pressure to seek the I-140 for you, given that your 6 year maximum date is December 7, 2025. Had we been proceeding with a PERM, we would have needed to have submit a PERM for you by December 7, 2024 in order to seek to extend your H in 1 year increments beyond your 6 year max. Instead, we are now faced with needing the I-140 approval to seek to extend your H-1B beyond its 6 year max."

63. Ms. McGill's January 15, 2025, 6:43 AM Eastern Time, communication was the first written communication BAL transmitted to Mr. Pachikoru in which BAL identified December 7, 2024 as the date by which a PERM filing would have had to be made in

[16] cobalt2.balglobal.com/#/dashboard/casequestionnaire/%5B1817210%5D/3152399#category-22-1817210.

order to preserve Mr. Pachikoru's eligibility for extension of H-1B status beyond the six-year statutory maximum under AC21 § 106(a).

**Part XIV — Drafting The NIW Letters Between January and March, 2025**

64. The four NIW reference letters BAL later produced (¶¶ 73–74) detail that Ms. Foster created them in BAL's files on January 29, 2025 — the Reference Letters #1 through #4 — and last modified them on February 5, 2025.

   a. On February 14, 2025, at 6:35 AM Eastern Time, Mr. Pachikoru wrote to Ms. McGill, marked high importance, following up on whether BAL had reviewed the information he had provided and stating he would upload additional information that weekend.

   b. On February 16, 2025 at 1:04 PM Eastern Time:

      i. Ms. McGill responded by email, in pertinent part:

         "we have draft NIW letters we are preparing to send across to you next week of [sic] your review and comments so please expect those shortly."

      ii. BAL never transmitted the draft letters to Mr. Pachikoru.

   c. On February 21, 2025 at 3:59 PM Eastern Time, BAL attorney Ms. Schaaf wrote to Mr. Pachikoru, in pertinent part:

      "currently working to finalize the draft letters based on the details you have provided" and "should be in touch shortly."

65. On March 15, 2025 at 2:05 PM Eastern Time, Mr. Pachikoru wrote to Ms. McGill that the case still showed as in the data-gathering phase, and asked "what do the next steps look like and when is the plan to file; additionally, is there an intent to file H-1B

extension anytime soon? as the VISA is only valid until 07DEC25." Ms. McGill responded on March 17, 2025 at 11:51 AM Eastern Time, in pertinent part:

> "Your H-1B cannot be extended until we are, at a minimum, within 6 months of your expiration. A December 2025 expiration will be extended in June but by that time we must have an approved I-140 to seek a 3 year extension. Once the NIW is in position to be filed, it can be adjudicated within 45 business days . . . . We will certainly move this forward as quickly as we can but we cannot guarantee that we will be in position to seek your H extension in June based on a variety of factors – it may need to be filed in the months thereafter depending on how the NIW filing proceeds."

66. As of March 17, 2025, BAL had not filed the EB-2 NIW petition on Mr. Pachikoru's behalf — nearly seven months after the August 23, 2024 conference at which Ms. McGill represented that BAL aimed to prepare and file it within approximately two to three months — notwithstanding that the four NIW reference letters had been drafted in BAL's files by February 5, 2025.

a. Between August 23, 2024 and March 20, 2025, BAL did not transmit to Mr. Pachikoru any draft of the EB-2 NIW petition or of the reference letters, notwithstanding Ms. McGill's August 23, 2024 statement that BAL would send the draft support letters to Mr. Pachikoru for his input.

b. BAL never thereafter filed the EB-2 NIW petition or PERM on Mr. Pachikoru's behalf, and no priority date was ever established for Mr. Pachikoru.

c. On March 25, 2025 — five days after Vertex terminated Mr. Pachikoru's employment on March 20, 2025 — BAL closed Mr. Pachikoru's permanent-residency matter, and transmitted no notice of that closure to him, then

or thereafter. Thirteen days later, on April 7, 2025, USCIS received the petitioner's request to withdraw the H-1B petition[17] (¶ 67(b)).

**Part XV — Mr. Pachikoru's FOIA Request To USCIS**

67. On April 18, 2025, Mr. Pachikoru submitted a request to USCIS under the Freedom of Information Act ("FOIA")[18]. USCIS provided documents in its response on June 17, 2025. The production included the H-1B petition as filed, the certified LCA, the May 4, 2023 RFE as issued, and the April 17, 2025 H-1B revocation notices. The production did not include the RFE response as submitted to USCIS or any version of the RFE worksheet; BAL has never produced either document to Mr. Pachikoru. The production was the first time Mr. Pachikoru received or reviewed the May 4, 2023 RFE. The RFE as issued and the revocation notices are attached as (See **Exhibit O** and **P**) and are incorporated by reference.

a. The RFE as issued was directed to the position offered to Mr. Pachikoru and to the degree the petition represented that position to require. The RFE:

i. Identified the offered position by the title "GMP Operational Quality Manager";

ii. Recited the certified LCA's occupational title of "Project Management Specialists" and the petition's representation, in its letter of support, that the position "requires a bachelor's degree in Project Management";

iii. Stated that, aside from the support letter's assertion, no documentary evidence supported that requirement;

[17] BAL Matter ID: 12140.758.6 (April 2, 2025 - April 8, 2025).

[18] NRC2025192548: USCIS production record pages bear April 22, 2025 processing stamp; the production was released June 17, 2025.

iv. Found, as to two of the qualifying criteria, "You did not submit any evidence for this criterion";

v. Found that the evidence did not establish the position to be "significantly different from other positions within the occupational category of Project Management Specialists"; and

vi. Requested evidence that the position's specific duties required the theoretical and practical application of a body of highly specialized knowledge and a degree in a specific specialty.

b. The H-1B revocation notice — addressed to BAL, 1 Federal St., Ste. 3603, Boston, Massachusetts — states that USCIS received the petitioner's request to withdraw the petition on April 7, 2025, and that the petition's approval was automatically revoked as of that date under 8 C.F.R. § 214.2(h)(11)(ii). BAL never informed Mr. Pachikoru of the withdrawal request or the revocation.

**Part XVI — BAL's May–July 2025 Statements and Production of NIW Materials**

68. On or about May 9, 2025, Mr. Pachikoru's then-counsel asked BAL, by telephone, whether BAL would continue Mr. Pachikoru's EB-2 NIW matter. BAL, through Mr. Curtis, declined, stating, in substance, that BAL represented Vertex.

a. At no time before or after that statement did BAL provide Mr. Pachikoru the conflict notification the DCJR promised.

b. On May 13, 2025, at 5:47 PM Eastern Time, Mr. Pachikoru's then-counsel corresponded with Mr. Curtis regarding the production of Mr. Pachikoru's immigration file.

69. On July 1, 2025, at 1:29 PM Eastern Time, Mr. Pachikoru's then-counsel wrote to Mr. Curtis. The communication stated, in pertinent part:

> "We are ready to receive Kranthi's EB2NIW visa documents, and all related communications between BAL and Vertex– as well as all related communications between BAL and Kranthi. Please send those materials to us as soon as possible."

70. On July 3, 2025, at 9:24 AM Eastern Time, Mr. Curtis responded by email to the July 1, 2025 communication, adding BAL General Counsel Susan Wehrer, Esq. ("Ms. Wehrer") to the correspondence. Mr. Curtis's response stated, in pertinent part:

> "As a law firm providing legal services to our clients, many of the communications that you have requested (with the scope being "all related communications") may be privileged or otherwise not relevant. We do have authorization to share the drafts of the NIW materials. Of note, those materials were previously shared directly with Kranthi."

71. On July 3, 2025, at 9:36 AM Eastern Time, Mr. Pachikoru's then-counsel wrote to Mr. Curtis, in pertinent part:

> "Any data not produced by your firm should be preserved . . . . For any data not produced by your firm on the grounds of privilege, we would appreciate a general description of such data (along with parties to any communications, dates of such communications), so that we are able to understand and consider the position your firm is taking with respect to such data."

72. Contrary to Mr. Curtis's July 3, 2025 statement (¶ 70), BAL had not previously transmitted the NIW reference letters or draft support letters to Mr. Pachikoru; Mr. Pachikoru first received them through Ms. Wehrer's July 22, 2025 production to his then-counsel. BAL never thereafter identified any prior transmission of those materials to Mr. Pachikoru.

73. On July 22, 2025, at 1:24 PM Eastern Time, Ms. Wehrer transmitted to Mr. Pachikoru's then-counsel, by secure upload, documents related to EB-2 NIW. Ms. Wehrer's transmittal communication stated, in pertinent part:

> "[W]e have now uploaded the requested documents from Kranthi's closed national interest waiver matter, including communications between BAL and Kranthi and draft support letters. You have also asked for "all related communications between BAL and Vertex." Communications between BAL and Vertex are confidential and will only be shared with Vertex's consent or as required by a court order."

74. The materials BAL transmitted on July 22, 2025 included the four NIW reference letters. The July 22, 2025 production was limited to the EB-2 NIW only, and did not include any materials from the H-1B RFE matter (BAL Matter ID: 12140.758.3). Between July 22, 2025 and Mr. Pachikoru's March 30, 2026 request, BAL transmitted no further materials to Mr. Pachikoru or his then-counsel and produced nothing from that matter.

75. The DCJR's Data and File Retention Notice provides that Mr. Pachikoru "may request delivery of a copy of [his] file" at any point during the retention period. The only condition the DCJR states is a possible retrieval and delivery fee; it does not condition delivery upon the company's consent or upon a court order.

**Part XVII — BAL's 2026 Refusal To Release RFE File to Mr. Pachikoru**

76. On March 30, 2026, at 11:37 AM Eastern Time, Mr. Pachikoru wrote to Ms. Wehrer, with copy to Mr. Curtis, requesting BAL's H-1B client file in matter ID 12140.758.3. Mr. Pachikoru's communication stated, in pertinent part:

> "1. The USCIS Request for Evidence issued May 4, 2023, for petition IOE8429937781. 2. The RFE response as submitted to USCIS on or about July 5–7, 2023, including all supporting documentation. 3. All drafts of the RFE worksheet — including the

> version I submitted on or about May 15, 2023, and any versions modified prior to the final filing"

77. On March 31, 2026, at 11:43 AM Eastern Time, Ms. Wehrer responded by email to Mr. Pachikoru copying Mr. Curtis and BAL counsel Martin Robles-Avila, Esq. ("Mr. Robles-Avila"). Ms. Wehrer's response stated:

> "Dear Kranthi, Thank you for your email. I see that you are asking for documents related to an H-1B petition that was filed on behalf of a sponsoring employer. Our representation in that matter does not permit us to release the information requested without the employer's consent confirmed in writing, or an appropriate court order or subpoena."

78. On April 1, 2026, at 11:08 AM Eastern Time, Mr. Pachikoru replied by email to Ms. Wehrer, copying Mr. Curtis and Mr. Robles-Avila. In that reply Mr. Pachikoru identified himself as the named beneficiary of the H-1B petition and as BAL's client under the joint representation he had executed on April 6, 2023 and again on September 1, 2024; invoked Massachusetts Rule of Professional Conduct 1.15A(b) and the DCJR's Data and File Retention Notice, quoting its provision that "[a]t any point during the retention period, you may request delivery of a copy of your file"; noted that BAL had produced materials from BAL matter ID 12140.758.5 to his then-counsel in July 2025 without requiring Vertex's consent; and asked that, if BAL maintained that any document was exempt from production, BAL identify the document and the provision of the Massachusetts Rules of Professional Conduct on which it relied.

79. On April 2, 2026 at 11:17 AM Eastern Time, Ms. Wehrer responded by email to Mr. Pachikoru. Ms. Wehrer's response stated, in pertinent part:

> "To confirm, we are not refusing to provide your file. As you note, we have already disclosed the information that relates directly to

> you. We understand that there is a dispute between you and Vertex. Given that we have obligations to both you and the company, as I noted in my prior email, release of documents beyond what has already been provided will require the written consent of Vertex or an appropriate court order. Please contact counsel for Vertex to request those documents or seek appropriate relief from the court in the pending case. We will comply with instructions either from Vertex and its counsel or the court."

80. Ms. Wehrer's April 2, 2026 response identified no specific document as exempt from production, identified no provision of the Massachusetts Rules of Professional Conduct on which BAL relied, and did not address the DCJR's file-delivery clause Mr. Pachikoru had quoted.

81. On April 2, 2026, at 5:19 PM Eastern Time, Mr. Pachikoru replied by email to Ms. Wehrer, with Mr. Curtis and Mr. Robles-Avila copied. Mr. Pachikoru's reply stated, in pertinent part:

> "I will accept your invitation to seek appropriate relief from the court in the pending litigation. In the interim, please confirm that BAL will preserve all documents in H-1B matter "12140.758.3", including all drafts, worksheets, internal communications, and the USCIS RFE, pending resolution of this matter. I reserve all rights and remedies available to me."

82. As of the date of filing of this Complaint, BAL has not produced any portion of the H-1B file in BAL matter ID 12140.758.3 to Mr. Pachikoru. In responding to Mr. Pachikoru's request, BAL did not invoke the DCJR's fee condition or offer delivery of the file upon payment of a retrieval fee; the only conditions BAL stated were Vertex's written consent or a court order or subpoena.

83. As of the date of this Complaint, BAL has not responded to Mr. Pachikoru's April 2, 2026, 5:19 PM Eastern Time communication.

84. At no time did BAL notify Mr. Pachikoru of any conflict of interest pursuant to the DCJR's notification provision, and at no time did BAL notify Mr. Pachikoru of any withdrawal from, or termination of, its representation of him.

## VI. STATEMENT OF CLAIMS

### ALLEGATIONS COMMON TO ALL COUNTS

85. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 84 above as if fully set forth herein.

### RELATIONSHIP

86. BAL represented Mr. Pachikoru under the written DCJR he executed on April 6, 2023, and again on September 1, 2024 (¶¶ 15, 18) — a single, continuous engagement encompassing the H-1B petition, the response to the May 4, 2023 RFE, and the permanent-residency matter (¶¶ 14, 18). BAL advised him in that capacity through at least March 17, 2025 (¶ 65), and at no time — whether directly or through his then-counsel — notified him of any conflict, withdrawal, or termination of that representation (¶¶ 17, 68(a), 84). That relationship existed at the time of each act and omission alleged in each Count below. Separately and in the alternative, BAL's obligations respecting Mr. Pachikoru's client file survived any conclusion of its services by the DCJR's own terms (¶¶ 16(f), 75).

### INJURY

87. As a direct and proximate result of the conduct alleged in each Count below, Mr. Pachikoru sustained actual, appreciable, and non-speculative loss:

a. His eligibility under AC21 § 106(a) to extend H-1B status in one-year increments beyond the six-year statutory maximum was forfeited on December 7, 2024;

b. No PERM and no EB-2 NIW petition was ever filed on his behalf, and no priority date was ever established (¶ 66(b));

c. The approved validity of his H-1B petition ended December 6, 2025 and his recaptured six-year maximum fell on December 7, 2025 (¶¶ 48, 58(a), 62); the forfeiture alleged in sub-paragraph (a), together with the absence of any filing alleged in sub-paragraph (b), left him without the extension eligibility that a timely filing would have preserved (¶¶ 62, 65, 66(b));

d. He has been unable to work lawfully in the United States since March 20, 2025, losing earnings and earning capacity from lawfully authorized professional employment built over a decade of graduate training and professional experience; the forfeiture alleged in sub-paragraph (a) also extinguished the practical value of H-1B portability under 8 U.S.C. § 1184(n), because no successor employer's petition could have extended his status beyond his recaptured six-year maximum absent the qualifying filing BAL never made (¶¶ 58(a), 62, 66(b));

e. He incurred out-of-pocket costs, including the costs of the counsel he engaged in 2025 to obtain his file and materials (¶¶ 68–74).

**PERMANENCE AND INJURY TO THE IMMIGRATION RECORD**

88. December 7, 2024 cannot be recreated, and no later filing can restore the forfeited H-1B extension eligibility or supply the priority date that was never established. Mr. Pachikoru further sustained a distinct and continuing injury to his immigration record:

a. The irreconcilable and facially contradictory classification codes bearing on the specialty-occupation basis of his petition (¶¶ 22(b)–(e), 23) are embedded in the USCIS record of that petition, confirmed by the FOIA production (¶ 67), and BAL never corrected them (¶ 48).

b. That record burdens a future EB-2 NIW petition in which Mr. Pachikoru's advanced and specialized skills related to his field of occupation and qualifications are at issue. The USCIS's May 4, 2023 RFE is the demonstration: a certified classification inconsistent with the position's bona fide duties drew a demand for evidence correlating those duties with a degree relating to a specialty occupation, and the finding, as to two of the qualifying criteria, that "[y]ou did not submit any evidence for this criterion" (¶ 67(a)).

c. Mr. Pachikoru cannot himself cure that record. "A beneficiary of a petition is not a recognized party in such a proceeding", 8 C.F.R. § 103.2(a)(3). BAL made the entries in those filings (¶¶ 22(b)–(c)) and executed the petition's preparer's declaration under penalty of perjury (¶ 22(a)). Correction therefore requires action by, or a sworn factual statement from, its preparer.

**TIMING OF THE INJURY**

89. The eligibility alleged in ¶ 87(a) lapsed on December 7, 2024 — one hundred three days before Vertex terminated Mr. Pachikoru's employment on March 20, 2025 — at which time Mr. Pachikoru remained employed and held valid H-1B status. The EB-2 NIW pathway BAL selected and pursued (¶¶ 58(c), 59) required no employer sponsor: the EB-2 NIW dispenses with the requirement that the beneficiary's services be sought by a United States employer. 8 U.S.C. § 1153(b)(2)(B)(i). Each act and omission alleged

herein was BAL's own — the selection and entry of the classifications, the withholding of the RFE and of the response filed in his name, the deferral recommendation, the strategy settled without him, and the absence of any qualifying filing (¶¶ 22–23, 30, 33, 36, 41–43, 46–47, 49–51, 58(c), 59–61, 66(b)). To the extent BAL contends that any conduct of Vertex concurred in producing any loss alleged herein, that concurrence neither excuses nor diminishes BAL's liability; BAL's acts and omissions were a substantial contributing cause of each such loss.

**RULES OF PROFESSIONAL CONDUCT**

90. Where a Count below cites a Massachusetts Rule of Professional Conduct ("Mass. R. Prof. C."), Mr. Pachikoru cites it as evidence of the standard of conduct applicable to a Massachusetts attorney and of BAL's departure from that standard, and not as an independent basis of liability. Mr. Pachikoru does not assert, and does not rely upon, any private right of action arising from the Mass. R. Prof. C. or from the Supreme Judicial Court ("S.J.C.") Rule 3:07, and seeks no relief for any violation of those Rules as such.

## COUNT I — LEGAL MALPRACTICE

91. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

**DUTY**

92. BAL was Mr. Pachikoru's counsel on the H-1B petition, on the response to the May 4, 2023 RFE, and on the permanent-residency matter (¶¶ 14–19, 86). BAL therefore owed him the duty to exercise the degree of care and skill of the average qualified practitioner in the field in which it undertook to act — United States immigration law, in which BAL

holds itself out as a national firm serving employers and their foreign-national employees (¶ 5(a)). This Count rests on BAL's want of professional care and skill. It does not rest on BAL's divided loyalty or on any allegation of intent, which are the subjects of Counts II and III.

**BREACH**

93. BAL failed to exercise that care and skill, in that it:

a. Selected an occupational classification materially different from the one within which the offered position's bona fide duties fell, and irreconcilable with the specialty-occupation basis of the petition (¶¶ 22(b)–(e), 23, 88(a)–(b));

b. Advised Mr. Pachikoru on May 4, 2023 that he could begin employment at his convenience and that the risk of denial was small — reversing the instruction BAL had given him ten days earlier — while an RFE directed to the specialty-occupation basis of his petition and to the degree it represented his position to require was pending and was being withheld from him (¶¶ 26, 29–30, 32–36, 67(a));

c. Prepared and filed the RFE response in Mr. Pachikoru's name in conjunction with Vertex personnel without verifying its contents with Mr. Pachikoru — the only person with first-hand knowledge of his duties, education, and credentials — and without providing him any draft or final version for review or approval before filing (¶¶ 40–44, 45(e), 47);

d. Took no step after the July 10, 2023 approval to amend or correct the occupational classification on the certified LCA or the Form I-129, and did not advise Mr. Pachikoru that correction was available (¶ 48);

e. Recommended to Vertex in July 2023 that initiation of Mr. Pachikoru's permanent-residency sponsorship be deferred, without performing or disclosing any analysis of the effect of that deferral on the time then remaining before his six-year statutory maximum (¶¶ 49–51);

f. Did not act on its own recommended January 2024 initiation date, and presented Mr. Pachikoru no permanent-residency pathway until July 24, 2024 (¶¶ 49, 51–52);

g. Allowed the December 7, 2024 date to pass without a filing, having neither computed, calendared, nor monitored it, and transmitted to Mr. Pachikoru no attorney communication regarding the status, strategy, timeline, or risk of his permanent-residency matter for the one hundred thirty-six days from September 1, 2024 through January 15, 2025 — a period that wholly encompassed that date (¶¶ 60–63);

h. Did not advise Mr. Pachikoru, at any time before December 7, 2024 passed, of that date or of its consequence: that a PERM application or an EB-2 NIW petition filed on his behalf on or before that date would — by the fact and date of the filing alone — preserve his eligibility to extend H-1B status in one-year increments beyond the six-year maximum, and that the absence of any such filing by that date would forfeit it (¶¶ 53–54, 58(d)–(f), 60–61);

i. Did not advise Mr. Pachikoru that the EB-2 NIW pathway BAL had selected required no employer sponsor and could be filed on his own behalf, through counsel of his own choosing, in time to preserve that eligibility (¶¶ 52, 58(c), 59, 60); and

j. Did not file the Form I-140 within the two-to-three-month period BAL represented on August 23, 2024, or at any time thereafter, and did not transmit to Mr. Pachikoru the reference letters that had been drafted in BAL's own files by February 5, 2025 (¶¶ 59, 64, 65, 66(a)–(b)).

94. The conduct alleged in ¶ 93 departed from the standard of care of the average qualified practitioner handling employment-based immigration matters, including as reflected in Mass. R. Prof. C. 1.1 (Competence) and 1.3 (Diligence). See ¶ 90.

**CAUSATION**

95. Eligibility to extend H-1B status in one-year increments beyond the six-year statutory maximum turns on the fact and date of a qualifying filing — a PERM application filed with the DOL, or an immigrant visa petition (EB-2 NIW) filed with USCIS, on the beneficiary's behalf — and not on its adjudication or its outcome; the exemption is available once 365 days have elapsed since that filing. AC21 § 106(a); 8 C.F.R. § 214.2(h)(13)(iii)(D)(1).

96. Mr. Pachikoru's recaptured six-year maximum fell on December 7, 2025 (¶¶ 58(a), 62). The operative filing date was therefore December 7, 2024 — the date BAL itself identified, in writing, thirty-nine days after it had passed (¶¶ 62–63). Either of the two filings BAL was engaged to make would have satisfied it, and BAL made neither (¶ 66(b)).

97. But for the conduct alleged in ¶ 93, a qualifying filing would have been made on or before December 7, 2024 and Mr. Pachikoru probably would have obtained a better result, by each of the following independent routes:

a. Absent BAL's deferral recommendation, or upon disclosure of that deferral's consequence, initiation would have occurred in or about July 2023; on BAL's own component timeline — a few weeks to fix the job description, six to seven months for the PWD, and two to three months for recruitment (¶ 53) — the application for PERM would have been submitted well before December 7, 2024.

b. Initiation on BAL's own recommended January 2024 date (¶ 49) would, on the shorter end of BAL's own stated ranges (¶ 53), likewise have yielded submission before December 7, 2024. BAL instead presented no pathway until July 24, 2024 (¶ 52).

c. Had BAL adhered to the two-to-three-month EB-2 NIW timeline it represented on August 23, 2024, the Form I-140 would have been filed before December 7, 2024 (¶ 59). Nothing on Mr. Pachikoru's side stood in the way: he supplied the information BAL requested (¶¶ 60, 64(a), (c)); before December 7, 2024 no attorney of BAL requested any outstanding item from him or advised that the timing of the filing carried any consequence, and BAL's only follow-up came thirty-nine days after the date had passed (¶¶ 54, 58(e), 60–61); and once BAL undertook the drafting, all four reference letters were created and last modified in BAL's own files (¶ 64) and were never transmitted to him (¶¶ 64(b)(ii), 66(a)).

d. Had BAL disclosed the December 7, 2024 date and its significance at any time before it passed — including at the August 23, 2024 conference, at which Ms. McGill recited each figure from which the date derived (¶ 58(f)) — Mr. Pachikoru would have caused a qualifying filing to be made before that date, through BAL or through counsel of his own choosing. He had already asked that the PERM

pathway proceed in parallel with the EB-2 NIW (¶¶ 55, 57) and had pressed BAL repeatedly for the status of the matter (¶¶ 56, 64(a), 65); and the EB-2 NIW required no employer sponsor and could have been filed on his own behalf. 8 U.S.C. § 1153(b)(2)(B)(i).

**DAMAGES**

98. As a direct and proximate result of the conduct alleged in ¶ 93, Mr. Pachikoru sustained the losses alleged in ¶¶ 87–88. Those losses are not speculative: what was forfeited was an eligibility that attached upon a filing within BAL's control, the date for that filing cannot be recreated, and no later filing can restore it. No act or omission of Mr. Pachikoru contributed to those losses (¶ 21), and no conduct of Vertex excuses or diminishes BAL's liability for them (¶ 89).

## COUNT II — BREACH OF FIDUCIARY DUTY

99. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

**DUTY**

100. The relationship of attorney and client is a fiduciary relationship as a matter of law. BAL was Mr. Pachikoru's attorney throughout the period alleged (¶ 86) and therefore owed him undivided loyalty and full and fair disclosure of every fact material to his interests — obligations arising by operation of law from the relationship itself, whose content the DCJR states in BAL's own words (¶¶ 16(a), (d)–(f), 19, 75). This Count rests on that disloyalty and want of candor, not on any want of professional care or skill, which is the subject of Count I: the acts and omissions alleged below are pleaded as choices — BAL

possessed the facts, and the interest of Vertex, the client that paid BAL (¶ 19), was the reason those facts were not disclosed to Mr. Pachikoru and those steps were not taken on his behalf.

**BREACH**

101. BAL preferred the interests of Vertex to those of Mr. Pachikoru, its joint client, and withheld from Mr. Pachikoru facts material to his interests that BAL was bound to disclose, in that it:

a. Refused Mr. Pachikoru's requests for the RFE issued on his own petition on the stated ground that "[p]er company policy, the RFE is not shared with employees" — a policy, whether Vertex's or BAL's own, that BAL applied as the measure of what it would disclose to its own joint client — and never transmitted the RFE to him (¶¶ 28, 30, 32–33, 36);

b. Refused to provide the completed RFE worksheet, withheld every draft and final version of the response BAL filed in Mr. Pachikoru's name, and prepared the RFE response in conjunction with Vertex (¶¶ 40–44, 45(e), 47);

c. Declined Mr. Pachikoru's request that the PERM pathway proceed in parallel with the EB-2 NIW, on the stated grounds, in substance, that pursuing both would waste Vertex's resources and that BAL owed a fiduciary responsibility to Vertex (¶¶ 55, 57, 58(c));

d. Settled Mr. Pachikoru's permanent-residency strategy with Vertex personnel in the days before the August 23, 2024 conference, without Mr. Pachikoru's knowledge or input (¶ 58(c));

e. Withheld the December 7, 2024 date — its existence, its approach, its passage, and its consequence under AC21 § 106(a) — throughout the period in which disclosure would have permitted Mr. Pachikoru to protect himself — by causing a qualifying filing to be made before that date, through BAL, which he had already asked to proceed with the PERM in parallel (¶¶ 55, 57), or through counsel of his own choosing under the sponsor-independent EB-2 NIW (¶ 89) — while possessing every fact from which that date derived (¶¶ 54, 58(e)–(f), 60–61);

f. Procured Mr. Pachikoru's re-execution of the DCJR on September 1, 2024, nine days after that conference, without disclosing the division of loyalty then existing, and thereafter maintained one hundred thirty-six days of attorney silence spanning December 7, 2024, and disclosed the date and its significance only on January 15, 2025, after it had passed (¶¶ 18, 58(c), 60, 62–63);

g. Never gave the conflict notification, and never effected the withdrawal, that the DCJR itself promised — not upon the events of August 2024, and not upon Vertex's March 20, 2025 termination of Mr. Pachikoru's employment, the very circumstance the DCJR identifies as one in which a conflict could arise (¶¶ 16(c), 16(e), 17, 68(a), 84);

h. Closed Mr. Pachikoru's permanent-residency matter on March 25, 2025 without any notice to him (¶ 66(c)); declined to continue that matter on the stated basis, in substance, that BAL represented Vertex (¶ 68); and never informed him that USCIS had received the petitioner's request to withdraw his H-1B petition on April 7, 2025, or that the petition's approval had been automatically revoked (¶ 67(b)); and

i. Conditioned Mr. Pachikoru's access to his own client file, on March 31 and April 2, 2026, upon the written consent of Vertex — by then the party adverse to him in pending litigation — and directed him to obtain that consent from Vertex himself (¶¶ 76–79), although BAL had itself obtained the necessary authorization in July 2025 and required nothing of him (¶¶ 70, 73), and although BAL had acknowledged in writing that no claim of privilege lies as between the joint clients (¶ 16(d)).

102. The conduct alleged in this Count departed from the fiduciary standards governing Massachusetts attorneys, including as reflected in Mass. R. Prof. C. 1.7 (conflict of interest), 1.4 (communication), and 1.15A(a)–(b) (client files). See ¶ 90.

**CONSENT**

103. No consent defeats this Count. The DCJR's waiver addressed the possibility that Mr. Pachikoru's interests "could come into conflict" with the interests of the Company "at some future time" (¶ 16(b)); it was given in the same document in which BAL undertook that Vertex's payment would not interfere with BAL's independent judgment, and that upon an actual conflict BAL would notify Mr. Pachikoru and take appropriate action likely including withdrawal (¶¶ 16(a), (e)) — notification BAL never gave, and withdrawal it never made (¶¶ 17, 68(a), 84). Nor was Mr. Pachikoru's consent informed as to any matter alleged in ¶ 101: the facts material to that consent were withheld from him when he executed the DCJR on April 6, 2023, and were still withheld when BAL procured his re-execution of it on September 1, 2024 (¶¶ 15, 18, 58(c), 60–61).

**CAUSATION**

104. But for BAL's preference for the interests of Vertex, and its suppression of facts material to Mr. Pachikoru's interests, the losses alleged in ¶¶ 87–88 would not have been sustained, and no act or omission of Mr. Pachikoru contributed to them. Had BAL disclosed the December 7, 2024 date and its consequence, or given the conflict notification the DCJR promised, at any time before that date passed, Mr. Pachikoru — who had already asked that the PERM pathway proceed in parallel with the EB-2 NIW (¶¶ 55, 57), and who pressed BAL repeatedly for the status of his matter (¶¶ 56, 64(a), 65) — would have insisted upon a qualifying filing before the date, or engaged independent counsel in time to make one.

105. The DCJR's own protocol describes that result. Notification of the conflict, followed by withdrawal from the representation of Mr. Pachikoru (¶ 16(e)), would have placed him on notice of his true position and left him free to obtain counsel whose loyalty to him was undivided, at a time when a qualifying filing remained possible. BAL performed neither step (¶¶ 17, 84), and its silence left him uninformed and inactive through the passage of the date (¶¶ 60–61).

**DAMAGES**

106. As a direct and proximate result of the conduct alleged in ¶ 101, Mr. Pachikoru sustained the losses alleged in ¶¶ 87–88 and, separately, the continuing deprivation of his own client file: he still does not possess the response BAL filed in his name in answer to the May 4, 2023 RFE, or any version of the worksheet from which BAL prepared it (¶¶ 47, 67, 82).

## COUNT III — FRAUD

## (MISREPRESENTATION AND CONCEALMENT)

107. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

**DUTY TO SPEAK**

108. As Mr. Pachikoru's attorney, BAL was under a duty of full and fair disclosure that arose from three independent sources, each present here:

a. Its fiduciary relationship with him (¶¶ 86, 100);

b. Its own partial disclosures on each subject addressed below, which obliged it to say enough to keep what it said from misleading him; and

c. Its exclusive possession of facts basic to decisions Mr. Pachikoru was then making — facts he could not obtain elsewhere and as to which BAL knew he was relying on BAL to inform him (¶ 21).

d. BAL defrauded him in two ways: by affirmative misrepresentations of material existing fact, including half-truths — statements on subjects BAL undertook to address without speaking fully — and by suppression of material facts it was bound to disclose. The attorney-client relationship existed at the time of every statement and omission alleged below (¶ 86).

**AFFIRMATIVE MISREPRESENTATIONS**

109. BAL, through the personnel and on the dates identified in the Statement Of Facts ("SOF") paragraphs cited below — each of which pleads the statement, its speaker, its date and time, and its words — made the following false representations of material existing fact:

a. SOF ¶ 29 — Ms. McGill's May 4, 2023, 10:24 AM statement that the RFE was "not specific to you or your credentials." The RFE as issued was directed to the position offered to Mr. Pachikoru and to the degree the petition represented that position to require:

   i. It recited the LCA's occupational title and the petition's representation that the position required a bachelor's degree in Project Management; stated that no documentary evidence beyond the support letter's assertion supported that requirement; and found, as to two of the qualifying criteria, that "[y]ou did not submit any evidence for this criterion" (¶ 67(a)).

   ii. By Ms. McGill's own statement in the same email — "Our team received a fax of the RFE this morning" — BAL described, as of its own knowledge, a document in its exclusive possession while refusing to provide it (¶¶ 28–30, 32–33, 36).

b. SOF ¶ 34 — Ms. McGill's May 4, 2023, 11:16 AM statements that Mr. Pachikoru could "start his employment at his convenience" and that the risk of denial was "quite small." Having undertaken to characterize the risk of proceeding, BAL omitted the RFE's actual content (¶ 67(a)) and reversed, without explanation, its own instruction ten days earlier to Mr. Pachikoru (¶¶ 26, 35).

c. SOF ¶ 38(a) — Ms. McGill's May 9, 2023, 3:40 PM statements that the project-management classification "aligned with the day to day duties" and was "a natural fit." The bona fide duties of the offered position fell within a materially different occupational classification (¶ 23). At minimum it was a half-truth:

i. Answering Mr. Pachikoru's direct written question, Ms. McGill omitted that the SOC Code BAL had selected placed the position outside the classification within which its duties fell; and

ii. That a certified classification inconsistent with those duties bore on the accuracy of the petition and of later filings made on his behalf (¶ 39).

iii. BAL made the statement as of its own knowledge, as the preparer of filings that simultaneously described the same position in three inconsistent terms — none the classification within which its bona fide duties fell, and the computer-occupation entry irreconcilable with the project-management entries (¶¶ 22(b)–(e), 23(d)).

d. SOF ¶ 45(d) — Ms. E. Lee's June 27, 2023, 3:34 PM statements that "no further action is needed on your end" and that the response "has already undergone attorney review." Having undertaken to tell Mr. Pachikoru what remained to be done, BAL omitted that the response would be finalized and filed in his name without his review, approval, or consent (¶¶ 45(e), 47), and that it was being prepared alongside Vertex personnel (¶¶ 43–44).

e. SOF ¶¶ 53, 58(a)–(b), (d)–(f) — Ms. McGill's August 2 and August 23, 2024 statements of the PERM timeline and of the futility of a PERM commenced then. Those statements recited every figure from which the December 7, 2024 date derived — the recaptured six-year maximum of December 7, 2025, and the requirement that at least one full year of H-1B time remain at submission — while omitting the date those figures yielded and the independent effect under AC21 § 106(a) of a qualifying filing made on or before it. Having undertaken to advise

Mr. Pachikoru on precisely that subject, BAL was bound to speak fully; it did not identify the date until January 15, 2025, after it had passed (¶¶ 54, 62–63).

f. SOF ¶¶ 16(a)–(b), 18 — The DCJR's representations, presented for Mr. Pachikoru's September 1, 2024 re-execution, that BAL was "not aware of any potential or actual conflict of interest" and that Vertex's payment "will not interfere with BAL's independent judgment." Nine days earlier Ms. McGill had stated, in substance, that BAL owed a fiduciary responsibility to Vertex; had declined Mr. Pachikoru's requested parallel PERM as wasteful of Vertex's resources; and had settled his permanent-residency strategy with Vertex personnel, without his knowledge or input (¶ 58(c)).

g. SOF ¶ 64(b)(i) — Ms. McGill's February 16, 2025, 1:04 PM statement that BAL had "draft NIW letters we are preparing to send across to you next week." The statement described, as in preparation, letters that BAL's own files record as created January 29, 2025 and unchanged since February 5, 2025 — eleven days before the statement (¶ 64); BAL never transmitted them (¶¶ 64(b)(ii), 66(a)), notwithstanding its August 23, 2024 undertaking to send the draft support letters for his input (¶ 59(b)); and no petition was ever filed (¶ 66(b)).

**FRAUDULENT CONCEALMENT**

110. Under the duties identified in ¶ 108, BAL suppressed the following material facts, each of which BAL was bound to disclose, each of which would have been important to Mr. Pachikoru's decisions, and none of which constitutes confidential information of the Company — each concerning Mr. Pachikoru's own petition, his own duties and credentials, his own immigration status, and his own deadlines:

a. The contents of the May 4, 2023 RFE, withheld despite Mr. Pachikoru's same-day requests and never provided (¶¶ 28, 30, 32–33, 36);

b. The contents of the RFE response BAL prepared with Vertex personnel and filed in Mr. Pachikoru's name and, on information and belief, that response's departure from his bona fide duties and qualifications (¶¶ 41–44, 47);

c. That the SOC code BAL selected placed the position in an occupational classification materially different from that within which its bona fide duties fell, and the accuracy risk that classification posed to the petition and to later filings (¶¶ 23, 39);

d. The December 7, 2024 date — its existence, its approach, and its passage — and the forfeiture under AC21 § 106(a) effected by proceeding solely and untimely under the EB-2 NIW (¶¶ 54, 58(e)–(f), 60–61);

e. That no qualifying filing had been made, and that none would be made, before that date (¶¶ 60–61, 66(b)).

**SCIENTER**

111. BAL made each representation alleged in ¶ 109 knowing it to be false; or with reckless disregard of whether it was true or false; or as a positive assertion of BAL's own knowledge, on a matter susceptible of actual knowledge, without knowing it to be true. BAL suppressed each fact alleged in ¶ 110 knowingly. In each instance the means of knowing lay in BAL's own possession: BAL held the RFE when it characterized it — "Our team received a fax of the RFE this morning," in Ms. McGill's own words (¶ 29); BAL itself selected and entered every occupational classification and field-of-study entry and stated its own selection rationale (¶¶ 22(b)–(c), 38(a)); BAL directed which

worksheet would be used, prepared the response from it, and filed it (¶¶ 43–44, 46–47); BAL possessed every figure from which the December 7, 2024 date derived and knew the rule that gave that date its significance, as Ms. McGill's January 15, 2025 writing confirms (¶¶ 61–62); BAL knew, on September 1, 2024, what had been said and settled nine days earlier (¶¶ 18, 58(c)); and BAL's own files recorded the creation, the last modification, and the non-transmission of the NIW reference letters (¶¶ 64, 72).

**INDUCEMENT AND RELIANCE**

112. BAL made each misrepresentation, and maintained each concealment, for the purpose of causing Mr. Pachikoru to act and to refrain from acting; and Mr. Pachikoru — a layperson with no legal training who depended on BAL for this precise information under an express written joint representation (¶ 21) — actually and justifiably did so. In reliance, Mr. Pachikoru:

a. Resigned from his prior employer where he held lawful H-1B status and commenced employment with Vertex on May 22, 2023, while the RFE remained pending and unadjudicated (¶¶ 25, 34–35);

b. Confined his worksheet responses to his project-management degree as instructed (¶¶ 38(b), 40);

c. Pressed no further for review of what BAL would file in his name, after BAL refused his request for the finalized worksheet and told him the response had undergone attorney review and that no further action was needed on his end (¶¶ 40–41, 45(d), 47);

d. Executed the DCJR a second time and continued the engagement rather than seeking counsel of his own (¶¶ 18, 60);

e. Made no protective filing and engaged no independent counsel before December 7, 2024, relying on BAL to disclose any fact requiring action on his part, while BAL withheld the facts that would have prompted it (¶¶ 21, 60–61); and

f. Continued to await BAL's transmission of the draft NIW letters, and neither engaged counsel of his own nor caused any filing to be made, from February 16, 2025 through the termination of his employment on March 20, 2025, in reliance on BAL's representations that the letters were prepared and would be sent for his review (¶¶ 59(b), 64(b)(i), 64(c), 65, 66(a)).

**DAMAGES**

113. Had any fact alleged in ¶¶ 109 and 110 been disclosed to him, Mr. Pachikoru would have acted, and in time: he had already asked that the PERM pathway proceed in parallel with the EB-2 NIW (¶¶ 55, 57) and had pressed BAL repeatedly for the status of his matter (¶¶ 56, 64(a), 65). As a direct and proximate result of BAL's misrepresentations and concealment, Mr. Pachikoru sustained the losses alleged in ¶¶ 87–88.

**CONCEALMENT AND THE LIMITATIONS PERIOD**

114. The conduct alleged in ¶¶ 109 and 110 is also the concealment pleaded in ¶ 13. Mr. Pachikoru did not learn that a filing had been required by December 7, 2024 until January 15, 2025 (¶¶ 62–63); did not receive or review the May 4, 2023 RFE until the June 17, 2025 FOIA production (¶ 67); and has never received the response BAL filed in his name, or any version of the worksheet from which BAL prepared it (¶¶ 47, 67, 82).

## COUNT IV — NEGLIGENT MISREPRESENTATION

## (Pleaded In The Alternative To Count III)

115. This Count is pleaded in the alternative to Count III, as Fed. R. Civ. P. 8(d)(2)–(3) permits. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 90 above, and further incorporates ¶ 109(a)–(g) and ¶ 112 solely for their identification of the statements alleged, of the respects in which each was false, and of Mr. Pachikoru's reliance.

**SCOPE**

116. This Count does not incorporate ¶ 111, and does not rest on any allegation of knowledge, recklessness, or intent to deceive. It is confined to the affirmative statements identified in ¶ 109(a)–(g), and is pleaded to the extent any such statement is found not to have been made with the state of mind alleged in ¶ 111. It does not rest on the nondisclosures alleged in ¶ 110, and it does not allege that BAL's professional services fell below the standard of care, which is the subject of Count I.

**SUPPLY OF FALSE INFORMATION FOR MR. PACHIKORU'S GUIDANCE**

117. BAL supplied the statements identified in ¶ 109(a)–(g) in the course of its business and profession as a law firm, and supplied them to Mr. Pachikoru by name, for his guidance in decisions that were his to make: whether to resign the employment in which he held lawful H-1B status and begin work at Vertex; how to answer the RFE worksheet; whether to review or question what BAL would file in his name; whether to consent again to the joint representation; whether to obtain a protective filing or independent counsel before December 7, 2024; and whether, in February and March 2025, to continue awaiting BAL's draft NIW letters rather than engage counsel of his own or cause a filing to be

made (¶ 112). Mr. Pachikoru was not an incidental recipient of that information. He was the person for whose benefit and guidance BAL intended it, and whose reliance BAL knew of and invited (¶¶ 21, 86).

**FAILURE TO EXERCISE REASONABLE CARE OR COMPETENCE**

118. BAL failed to exercise reasonable care or competence in obtaining, and in communicating, that information. At the time of each statement, the materials against which its accuracy could have been checked were in BAL's own possession:

a. The May 4, 2023 RFE, in BAL's possession that morning by Ms. McGill's own statement (¶ 29), before the statements alleged in ¶ 109(a)–(b) (¶ 67(a));

b. The occupational classification, the field-of-study entry and the proposed duties BAL had itself selected and entered, before the statement alleged in ¶ 109(c) (¶¶ 22(b)–(e), 23);

c. The worksheet BAL had directed be used and the response BAL was itself preparing, before the statements alleged in ¶ 109(d) (¶¶ 43–44, 46–47);

d. The recaptured six-year maximum date and the one-year-remaining requirement, from which the December 7, 2024 date derived by arithmetic, before the statements alleged in ¶ 109(e) (¶¶ 58(a)–(b), 61);

e. What BAL's own attorney had said, and settled with Vertex, nine days before the re-execution alleged in ¶ 109(f) (¶¶ 18, 58(c)); and

f. The NIW reference letters in BAL's own files — created January 29, 2025 and unchanged since February 5, 2025 — before the statement alleged in ¶ 109(g) (¶ 64). BAL did not check its statements against those materials and facts, and communicated each in terms they did not support.

**JUSTIFIABLE RELIANCE**

119. Mr. Pachikoru actually and justifiably relied on those statements in the manner alleged in ¶ 112. His reliance was justifiable and reasonable: he is not an attorney and has no legal training; he depended on BAL for precisely this information under an express DCJR (¶ 21); and the documents against which he might have tested the statements — the May 4, 2023 RFE, the completed worksheet, the response filed in his name, and the draft NIW letters — were in BAL's exclusive possession; the first three were withheld from him on request, and the letters were never transmitted (¶¶ 28, 30, 32–33, 36, 41–42, 47, 64, 64(b)(ii), 66(a)).

**PECUNIARY LOSS**

120. As a direct and proximate result of his reliance, Mr. Pachikoru sustained pecuniary loss, being the losses alleged in ¶¶ 87–88.

**COUNT V — BREACH OF CONTRACT**

121. Mr. Pachikoru realleges and incorporates by reference paragraphs 1 through 90 above as if fully set forth herein. This Count rests on BAL's failure to perform one specific written promise, and on BAL's conduct between March 30 and April 2, 2026. It neither depends upon nor asserts any want of professional care or skill, and it does not depend upon the existence of any fiduciary duty.

**AGREEMENT AND CONSIDERATION**

122. The DCJR is a written agreement, drafted by BAL, which Mr. Pachikoru executed on April 6, 2023 and again on September 1, 2024 (¶¶ 15, 18). It was supported by consideration. Mr. Pachikoru executed the DCJR and gave the written consent and

prospective conflict waiver BAL required of him in that document as the basis on which it would represent both him and Vertex (¶ 16(b)); he supplied BAL the information, documents, and completed worksheets the engagement called for (¶¶ 40, 64(a), (c)); and BAL undertook and performed the engagement.

**THE FILE-DELIVERY PROMISE**

123. Under the heading "Data and File Retention Notice," the DCJR provides that "[a]t any point during the retention period, you may request delivery of a copy of your file," and that "there may be a fee charged to retrieve the file and deliver it to you" (¶ 16(f)). The retention period is seven years (¶ 16(f)). The Notice's qualifying language — that BAL will "as a courtesy" make "best efforts" to retain the file — is directed to retention; the delivery sentence is separate and unqualified, and a possible retrieval and delivery fee is the only condition the DCJR places on delivery, which it does not condition upon the consent of the Company, or upon a court order or subpoena (¶ 75). That promise bound BAL whether or not its services had concluded: by its own terms the Notice operates "[a]fter our services conclude," so if they had concluded the retention period was running and the delivery right was live throughout; and BAL at no time notified Mr. Pachikoru of any withdrawal from, or termination of, its representation of him (¶¶ 17, 84).

**MR. PACHIKORU'S PERFORMANCE**

124. Mr. Pachikoru performed. He executed the DCJR on both occasions BAL presented it (¶¶ 15, 18); he gave the consent and the prospective conflict waiver BAL required (¶ 16(b)); and he furnished the information, documents, and worksheets BAL requested of him (¶¶ 40, 64(a), (c)). As to the delivery promise specifically, Mr. Pachikoru was and remains ready, willing, and able to pay any reasonable retrieval and delivery fee. BAL never

invoked that condition, never quoted or demanded any fee, and never offered delivery upon payment of one (¶ 82).

**BREACH**

125. On March 30, 2026, Mr. Pachikoru requested delivery of his file in BAL matter ID 12140.758.3, identifying the May 4, 2023 RFE, the RFE response as submitted to USCIS, and all drafts of the RFE worksheet (¶ 76). On March 31, 2026, and again on April 2, 2026, BAL refused to deliver those materials except upon the written consent of Vertex, or a court order or subpoena (¶¶ 77, 79) — conditions the DCJR does not impose (¶ 75) — and directed Mr. Pachikoru to obtain that consent from Vertex himself (¶ 79). BAL identified no document as exempt from delivery and no provision of the Mass. R. Prof. C. on which it relied (¶ 80), and did not respond at all to Mr. Pachikoru's April 2, 2026 communication (¶¶ 81, 83). As of the date of this Complaint, BAL has produced no portion of that file (¶ 82). BAL's earlier delivery of July 22, 2025 was confined to BAL matter ID 12140.758.5 and included no materials whatsoever from matter ID 12140.758.3 (¶¶ 73–74, 78); this Count does not concern the materials in matter ID 12140.758.5.

**HARM AND SPECIFIC PERFORMANCE**

126. As a result of BAL's breach:

a. Mr. Pachikoru has never received the response BAL filed in his name in answer to the May 4, 2023 RFE, or any version of the worksheet from which BAL prepared it (¶¶ 47, 67, 82); to the extent that harm is not susceptible of precise measurement, he is entitled to nominal damages for the breach. Damages are not, however, an adequate remedy for BAL's failure to deliver the file itself.

b. Those materials are available to him from no other source:

i. By BAL's own statement, the worksheet is not submitted to USCIS (¶ 41);

ii. The June 17, 2025 FOIA production included neither the response BAL filed nor any version of the worksheet (¶ 67);

iii. BAL never provided him the completed worksheet from which it prepared the response (¶¶ 43–44, 47, 82); and

iv. BAL has produced nothing from BAL matter ID 12140.758.3 (¶¶ 74, 82).

c. Mr. Pachikoru is entitled to an order directing BAL to perform the promise — to deliver a complete copy of his client file in BAL matter ID 12140.758.3, upon payment of any reasonable retrieval and delivery fee the DCJR permits, and to preserve that file pending delivery.

## VII. PRAYER FOR RELIEF

WHEREFORE, Mr. Pachikoru respectfully requests that this Court enter judgment in his favor and against BAL, and award the following relief:

A. Compensatory damages on Counts I through V, in an amount to be determined at trial, together with nominal damages on Count V to the extent compensatory damages are not susceptible of precise measurement;

B. On Count V and, in the alternative, on Count II, an order directing BAL to deliver to Mr. Pachikoru, within fourteen (14) days, a complete copy of Mr. Pachikoru's client file in BAL matter IDs 12140.758.1–6 (¶ 19) — including the RFE response as submitted to USCIS, and every version of the RFE worksheet — upon Mr. Pachikoru's payment of

any reasonable retrieval and delivery fee under the DCJR's Data and File Retention Notice (¶¶ 16(f), 75, 76), and to preserve that file pending delivery.

C. On Counts I and II, equitable relief directing BAL, within thirty (30) days and at its own expense, to correct the record of the occupational classifications BAL entered in the filings it prepared in Mr. Pachikoru's name (¶¶ 22(b)–(e), 23, 88), by:

   1. Executing and delivering to Mr. Pachikoru a sworn statement, signed by BAL as preparer of the petition, identifying each occupational classification and field-of-study entry BAL made in those filings, and stating the occupational classification within which the offered position's bona fide duties fell — in a form suitable for submission by Mr. Pachikoru in any future immigration proceeding in which the record of that petition is at issue (¶ 88(c)); and

   2. In the alternative, or in addition, preparing and submitting to USCIS a corrective notification to the same effect, signed by BAL as preparer of the petition.

D. Pre-judgment interest pursuant to M.G.L. c. 231, §§ 6B and 6H (Counts I through IV) and § 6C (Count V), and post-judgment interest pursuant to 28 U.S.C. § 1961;

E. Costs of this action; and

F. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Mr. Pachikoru demands a trial by jury on all issues so triable.

Dated: August 18, 2026

Respectfully submitted,

Kranthi Sagar Pachikoru
Plaintiff, Pro Se

2 Congress St, Ste 18
Milford, MA 01757
Phone: 571-570-3607
Email: kranthi@tuta.io